[No. S157008. Apr. 30, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY LOUIS GAINES, Defendant and Appellant.

## Counsel

Peter Gold, under appointment by the Supreme Court, and Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith Borjon, Kathy S. Pomerantz, Scott A. Taryle, Kristofer Jorstad and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—A criminal defendant, on a showing of good cause, is entitled to discovery of information in the confidential personnel records of a peace officer when that information is relevant to defend against a criminal charge. (Pen. Code, § 832.7; Evid. Code, § 1043 et seq.; see *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).) In this case, the Court of Appeal determined that the trial court abused its discretion by summarily denying defendant's *Pitchess* motion without first examining the requested records in camera to determine whether they contained relevant information. The Court of Appeal conditionally reversed the judgment of conviction and remanded the matter to permit the trial court to conduct an in camera review of the requested personnel records. If the trial court's inspection uncovered no relevant information, the trial court was to reinstate the judgment. If, on the other hand, relevant information was discovered during the in camera review, the trial court was to order disclosure, allow defendant an opportunity to demonstrate prejudice from the failure to disclose the relevant information, and order a new trial if there was a reasonable probability the outcome would have been different had the information been disclosed.

The parties agree that the trial court erred in failing to review the requested records in camera and that a remand is the appropriate remedy to permit the trial court to conduct that review. The parties further agree that if the in camera review uncovers no relevant information, the judgment should be reinstated. The dispute centers on the remainder of the disposition ordered by the Court of Appeal. Defendant argues that if the in camera review uncovers any information that ought to have been disclosed, the trial court's error in failing to order that disclosure prior to trial should be deemed reversible per se or, alternatively, that the judgment should be reversed unless the People can show that the failure to disclose the information was harmless beyond a reasonable doubt. The People, as did the Court of Appeal, believe that the burden of establishing prejudice from any error in failing to disclose relevant information lies with defendant, and that the proper standard of prejudice is whether there is a reasonable probability of a different result had the information been disclosed.

■ We conclude that the trial court's erroneous denial of a *Pitchess* motion is not reversible per se. Rather, the failure to disclose relevant information in confidential personnel files, like other discovery errors, is reversible only if there is a reasonable probability of a different result had the information been disclosed. We therefore affirm the judgment of the Court of Appeal, with one minor modification to the disposition.

## BACKGROUND[1]

On June 11, 2005, Los Angeles County Deputy Sheriff Roger Izzo was conducting undercover surveillance of a home in Lancaster where he believed narcotics were being sold. Some people left the house in a maroon minivan, and Deputy Izzo followed the minivan as it proceeded to a liquor store about half a mile away. He directed Deputies Steven Lehrman and Christopher McMaster to stop the minivan when it exited the area. As Izzo waited for the minivan's occupants to come out of the store, defendant Rodney Louis Gaines approached Izzo's unmarked vehicle and asked him whether he "smoked the white." Defendant offered to sell whatever Izzo might want and claimed he "had it all." Although Izzo declined the offer, defendant spit a small black plastic bindle into his hand and presented it to Izzo. After Izzo reiterated that he was not interested in buying drugs, defendant walked away.

Izzo then contacted the other two deputies and asked them to detain defendant for offering to sell drugs. While Izzo continued to wait, defendant again approached and handed Izzo a small piece of cocaine base, later determined to weigh 0.03 grams, and a glass pipe used for smoking the drug. Defendant said, "This one [is] on me. Hit this. You'll like it."

Moments later, when Deputies Lehrman and McMaster drove into the parking lot, defendant turned and walked quickly away. As he did so, he put his right hand to his mouth. McMaster ordered defendant several times to stop and, when he did not comply, grabbed him by the shirt and ordered him to get down on the ground. Lehrman noticed that defendant's mouth was clenched closed; he appeared to be chewing for a moment and then swallowed. When defendant finally opened his mouth, Lehrman saw white residue on his tongue and inside his mouth.

Izzo gave the other deputies the glass pipe and the 0.03 gram piece of cocaine in a base form.

Defendant, a convicted felon and admitted cocaine addict, denied offering to sell Izzo any drugs, denied spitting a bindle of drugs into his hand, and denied handing Izzo a pipe or cocaine. He testified at trial that he had gone to the liquor store to panhandle for money to buy cocaine. While there, he saw a fellow panhandler, an older man, go over to a car. When the panhandler returned, he offered to give defendant a piece of cocaine in exchange for use of his pipe. Defendant handed the panhandler his pipe. About 10 minutes later, the panhandler left the parking lot and indicated he had left defendant's

---

[1] These background facts are taken largely from the recital contained in the Court of Appeal opinion.

pipe on the side of a large trash receptacle. Defendant went back to the alley to retrieve his pipe and stuck the pipe in his sock. When he returned to the parking lot, Deputy Izzo called him over and asked whether he had any "rock" for sale. Defendant replied, "I don't sell rock, I just use it."

Suddenly, and without warning, Deputy McMaster grabbed him by the shirt and forced him to the ground. McMaster spotted the glass pipe in defendant's sock and ordered defendant to remove his socks and shoes. As defendant removed his left sock, a "little white speck hit the ground." Defendant thought the panhandler must have left the cocaine base in the pipe for him.

A jury convicted defendant of possessing cocaine base (Health & Saf. Code, § 11350) and possessing a smoking device (id., § 11364, subd. (a)). Defendant then admitted a prior strike conviction and seven prior prison term allegations and was sentenced to 11 years in prison.

The Court of Appeal determined that the trial court had erred in summarily denying defendant's *Pitchess* motion without first conducting an in camera review of the requested records. In the trial court, defendant had sought records relating to whether the deputies had previously falsified police records, planted evidence, or committed acts demonstrating dishonesty, and the Court of Appeal found that defendant's showing satisfied "the ' "relatively low threshold for discovery" ' " under our precedents. The Court of Appeal conditionally reversed the judgment and remanded the case to permit the trial court to conduct an in camera review of the requested peace officer personnel records. The Court of Appeal's disposition provided that "[i]f the trial court's inspection on remand reveals no relevant information, the trial court must reinstate the judgment of conviction and sentence, which shall stand affirmed. If the inspection reveals relevant information, the trial court must order disclosure, allow appellant an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed."

We granted review on a single issue: "Is outright reversal or a remand for a showing of prejudice the appropriate remedy for a trial court's erroneous denial of a *Pitchess* motion (*Pitchess v. Superior Court*[, *supra*,] 11 Cal.3d 531)?"

## DISCUSSION

■   This court has reviewed at length in several recent cases the background and mechanics of the procedures by which a party may discover relevant evidence in confidential peace officer personnel records. (See, e.g.,

*Garcia v. Superior Court* (2007) 42 Cal.4th 63 [63 Cal.Rptr.3d 948, 163 P.3d 939]; *Warrick v. Superior Court* (2005) 35 Cal.4th 1011 [29 Cal.Rptr.3d 2, 112 P.3d 2]; *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228]; *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129].) It is sufficient here to reiterate that, on a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. (Evid. Code, § 1043, subd. (b).) Good cause for discovery exists when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 [260 Cal.Rptr. 520, 776 P.2d 222].) A showing of good cause is measured by "relatively relaxed standards" that serve to "insure the production" for trial court review of "all potentially relevant documents." (*Ibid.*) If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. (*Chambers v. Superior Court* (2007) 42 Cal.4th 673, 679 [68 Cal.Rptr.3d 43, 170 P.3d 617].) Subject to certain statutory exceptions and limitations (see Evid. Code, § 1045, subds. (b)–(e)), "the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 [114 Cal.Rptr.2d 482, 36 P.3d 21], quoting Evid. Code, § 1045, subd. (a); see also *Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1019.)

Applying this framework, the Court of Appeal determined that the trial court had erred in rejecting defendant's showing of good cause to justify an in camera review of the requested records. Defendant, representing himself, had alleged in his pretrial motion that Deputies McMaster and Lehrman did not have probable cause or reasonable suspicion to detain him, that Deputy Izzo never called McMaster and Lehrman to tell them defendant had tried to sell drugs, that defendant never placed drugs in or removed them from his mouth, and that all three deputies wrote arrest reports that contained false and misleading information. The Court of Appeal reasoned that any evidence that the deputies had previously falsified police reports or planted evidence would be relevant to support defendant's assertion that they had done so in this case. In the view of the Court of Appeal, the trial court erred in failing to conduct an in camera review of the deputies' personnel records to ascertain whether they contained discoverable information relevant to these potential defenses.

The People did not dispute the Court of Appeal's conclusion that the trial court had erred in failing to review the deputies' personnel records in camera, nor did they challenge the Court of Appeal's disposition conditionally reversing the judgment and remanding the matter to permit the trial court to

review these records. Under the remand order, the trial court was to reinstate the judgment if it determined that the records contained no relevant information; if the records contained relevant information, the trial court was to disclose the information, allow defendant an opportunity to demonstrate prejudice from the trial court's earlier failure to make this disclosure, and order a new trial if defendant demonstrated a reasonable probability the outcome would have been different had the relevant information been disclosed.

Instead, it was defendant who objected. In defendant's view, he was entitled to a new trial merely upon a showing that relevant information had been erroneously withheld, without any need to demonstrate prejudice from the nondisclosure. Defendant argued, alternatively, that if prejudice was a prerequisite to relief, the burden should be on the People to demonstrate that the erroneous failure to disclose the information was harmless beyond a reasonable doubt. We disagree with both of defendant's contentions.

■ As the parties concede, the proper remedy when a trial court has erroneously rejected a showing of good cause for *Pitchess* discovery and has not reviewed the requested records in camera is not outright reversal, but a conditional reversal with directions to review the requested documents in chambers on remand. (See Pen. Code, § 1260 [reviewing court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"].) "Section 1260 evinces a 'legislative concern with unnecessary retrials where something less drastic will do.' (*People v. Vanbuskirk* (1976) 61 Cal.App.3d 395, 405 [132 Cal.Rptr. 30] (*Vanbuskirk*) [remand to take evidence of fairness in pretrial identification procedures 'may avert the need for a retrial'].) '[W]hen the validity of a conviction depends solely on an unresolved or improperly resolved factual issue which is distinct from issues submitted to the jury, such an issue can be determined at a separate post-judgment hearing and if at such hearing the issue is resolved in favor of the People, the conviction may stand.' (*Ibid.*) In other words, 'when the trial is free of prejudicial error and the appeal prevails on a challenge which establishes only the existence of an unresolved question which may or may not vitiate the judgment, appellate courts have, in several instances, directed the trial court to take evidence, resolve the pending question, and take further proceedings giving effect to the determination thus made.' ([*People v. Minor* (1980) 104 Cal.App.3d 194,] 199 [163 Cal.Rptr. 501].)" (*People v. Moore* (2006) 39 Cal.4th 168, 176–177 [45 Cal.Rptr.3d 784, 137 P.3d 959].) ■ Thus, as we have previously held, when a trial court has failed to make a record of the *Pitchess* documents it reviewed in camera, it is appropriate to remand the case "with directions to hold a hearing to augment the record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion." (*People v. Mooc, supra*, 26 Cal.4th at p. 1231.) Similarly, when a trial court has failed to review the

*Pitchess* documents at all, it is appropriate to remand the case to permit the trial court to review the requested documents in chambers and to issue a discovery order, if warranted.[2]

After reviewing the confidential materials in chambers, the trial court may determine that the requested personnel records contain no relevant information. The Court of Appeal directed the trial court, in that circumstance, to reinstate the judgment; no party objects to that portion of the disposition.[3] It is also possible for the trial court to determine on remand that relevant information exists and should be disclosed. The Court of Appeal provided, in that event, that the trial court "must order disclosure, allow [defendant] an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed." This was not error.

■ "It is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery." (*People v. Memro, supra,* 38 Cal.3d at p. 684; see also *People v. Cruz* (2008) 44 Cal.4th 636, 670–671 [80 Cal.Rptr.3d 126, 187 P.3d 970]; cf. *People v. Snow* (1987) 44 Cal.3d 216, 226 [242 Cal.Rptr. 477, 746 P.2d 452] [infringement on right to fair and impartial jury is reversible per se].) Defendant contends nonetheless that no separate prejudice analysis should be required here, in that a trial court's determination that relevant information exists and should be disclosed is the result of "a process, akin to weighing prejudice, in which it has deemed the records integral to the defendant's case." Defendant misapprehends the *Pitchess* procedure.

---

[2] There is language in *People v. Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446] to suggest that an outright reversal, not a remand, is the appropriate remedy when the trial court erroneously denies a *Pitchess* motion without conducting an in camera review of the requested documents. (*Memro, supra,* 38 Cal.3d at p. 685.) However, no published decision has ever cited *Memro* as authority for an outright reversal in such circumstances, defendant does not contend here that *Memro* announced a rule requiring an outright reversal, and it would make no sense to reverse a judgment for a new trial "if it turns out after discovery is granted [at the retrial] that the personnel files contain no evidence to support the defendant's claim." (*Memro, supra,* 38 Cal.3d at p. 708 (conc. & dis. opn. of Grodin, J.).) We therefore overrule *Memro* to the extent it is inconsistent with the views expressed here.

[3] The Court of Appeal's disposition on this point provided that "[i]f the trial court's inspection on remand reveals no relevant information, the trial court must reinstate the judgment of conviction and sentence, *which shall stand affirmed.*" We are concerned, however, that the italicized language "could be construed to preclude the defendant from seeking appellate review of the trial court's rulings on the *Pitchess* motion following remand," even though "the defendant retains the right to appeal from the judgment for the limited purpose of challenging the *Pitchess* findings." (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 415 [78 Cal.Rptr.3d 907].) Accordingly, we will modify the Court of Appeal's disposition to delete the italicized language.

■ "This court has held that the good cause requirement embodies a 'relatively low threshold' for discovery" (*People v. Samuels* (2005) 36 Cal.4th 96, 109 [30 Cal.Rptr.3d 105, 113 P.3d 1125]), under which a defendant need demonstrate only "a logical link between the defense proposed and the pending charge" and describe with some specificity "how the discovery being sought would support such a defense or how it would impeach the officer's version of events" (*Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1021). The trial court may then disclose information from the confidential records that "is relevant to the subject matter involved in the pending litigation" (Evid. Code, § 1045, subd. (a)), provided that the information does not concern peace officer conduct occurring more than five years earlier, the conclusions of an officer investigating a citizen complaint about a peace officer, or facts that are so remote as to make disclosure of little or no practical benefit (*id.*, § 1045, subd. (b)). Evidence Code section 1045 thus balances the officer's privacy interests against the defendant's need for disclosure. (*Alford v. Superior Court, supra*, 29 Cal.4th at p. 1039.) As we have previously explained, however, this weighing process for screening out unwarranted discovery requests is *not* akin to the inquiry into whether a particular error in denying discovery was prejudicial, an inquiry that involves an assessment or weighing of the persuasive value of the evidence that was presented and that which should have been presented. (*Warrick v. Superior Court, supra*, 35 Cal.4th at p. 1026; cf. *People v. Vanbuskirk, supra*, 61 Cal.App.3d at p. 407, fn. 10 [once the Court of Appeal determined that prejudice existed "if either identification was unfair," the matter was remanded to the trial court to consider defendant's claim that both eyewitness identifications were unfairly tainted by an improper photographic identification, and to order a new trial if it determined that either identification was unfair].) Indeed, a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive. (*Warrick, supra*, 35 Cal.4th at p. 1026.)

■ Accordingly, a trial court's determination that information in the requested records ought to have been disclosed is not equivalent to a finding that such information would have had any effect on the outcome of the underlying court proceeding—nor, indeed, even to a finding that such information would have been admissible, inasmuch as the trial court's duty to disclose encompasses information that is not itself admissible but which "may lead to admissible evidence." (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1048–1049 [77 Cal.Rptr.3d 226, 183 P.3d 1199].) To obtain relief, then, a defendant who has established that the trial court erred in denying *Pitchess* discovery must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 960 [44 Cal.Rptr.3d 237, 135 P.3d 649]; *People v. Samuels, supra*, 36 Cal.4th at p. 110; *People v. Memro, supra*, 38 Cal.3d at p. 685;

*People v. Johnson* (2004) 118 Cal.App.4th 292, 305 [12 Cal.Rptr.3d 885]; *People v. Hustead* (1999) 74 Cal.App.4th 410, 421–422 [87 Cal.Rptr.2d 875]; see also *People v. Gill* (1997) 60 Cal.App.4th 743, 751 [70 Cal.Rptr.2d 369] [new trial required if the *Pitchess* evidence would have been "helpful" to the defense and of a nature "to affect the outcome of his trial"]; see generally Cal. Const., art. VI, § 13.)

█ The reasonable-probability standard of prejudice we have applied in *Pitchess* cases is the same standard we have applied generally to claims that the prosecution improperly withheld exculpatory evidence in violation of a defendant's right to due process. *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*) held "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." (*Id.* at p. 87.) Evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " (*Kyles v. Whitley* (1995) 514 U.S. 419, 433–434 [131 L.Ed.2d 490, 115 S.Ct. 1555].) **(9)** It is true, as defendant points out, that a trial court need make a determination only of "the materiality [of the requested documents] to the subject matter involved in the pending litigation" before ordering disclosure of the confidential materials under *Pitchess*. (Evid. Code, § 1043, subd. (b)(3).) But a trial court's finding that information is material within the meaning of the *Pitchess* scheme does not mean that it is material within the meaning of *Brady*, for these two legal schemes "employ different standards of materiality." (*City of Los Angeles v. Superior Court, supra*, 29 Cal.4th at p. 7.) "Our state statutory scheme allowing defense discovery of certain officer personnel records creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady, supra*, 373 U.S. 83. Unlike *Brady*, California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial [citation], that is, 'all information pertinent to the defense.' " (*City of Los Angeles v. Superior Court, supra*, 29 Cal.4th at p. 14.) Consequently, a finding that material evidence was wrongfully withheld under *Pitchess* does not invariably mean that a defendant's right to due process was denied, "since 'the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.' " (*People v. Salazar* (2005) 35 Cal.4th 1031, 1050 [29 Cal.Rptr.3d 16, 112 P.3d 14], quoting *Kyles v. Whitley, supra*, 514 U.S. at pp. 436–437.) To establish a due process violation, a defendant must do more than show that "helpful" evidence was withheld (*People v. Gill, supra*, 60 Cal.App.4th at p. 751); a defendant must go on to show that " 'there is a reasonable probability that, had [the evidence] been disclosed to the defense, the result . . . would have been different' " (*In re Sassounian* (1995) 9 Cal.4th 535, 544 [37 Cal.Rptr.2d 446, 887 P.2d 527]; see generally *Weatherford v. Bursey*

(1977) 429 U.S. 545, 559 [51 L.Ed.2d 30, 97 S.Ct. 837] ["There is no general constitutional right to discovery in a criminal case . . . ."]; *Wardius v. Oregon* (1973) 412 U.S. 470, 474 [37 L.Ed.2d 82, 93 S.Ct. 2208] [except for *Brady, supra,* 373 U.S. 83, "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded"]).

Defendant contends also that the withholding of discoverable materials should result in a reversal without any further showing of prejudice because the nature of a *Pitchess* violation precludes a court from undertaking a meaningful inquiry into whether prejudice occurred. In defendant's view, courts are "poorly equipped to appraise the ways in which the failure to turn over critical police personnel records prejudiced the defendant," including "how their deprivation adversely affected the defendant's overall strategy." We disagree. The determination of materiality for *Brady* claims " 'is necessarily fact specific' " (*People v. Salazar, supra,* 35 Cal.4th at p. 1052, fn. 8), yet courts are called upon in each case to assess the probable effect of withholding such evidence on the outcome. Moreover, the *Brady* duty of disclosure, like the duty announced in *Pitchess,* extends to impeachment evidence (*People v. Salazar, supra,* 35 Cal.4th at p. 1050), including impeachment of peace officers (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1474, fn. 6 [6 Cal.Rptr.3d 138]; accord, *U.S. v. Alvarez* (9th Cir. 1996) 86 F.3d 901, 903–905). In determining whether there is a reasonable probability that disclosure of such evidence would have yielded a different outcome under *Brady,* " 'the court must consider the non-disclosure dynamically, taking into account the range of predictable impacts on trial strategy.' " (*U.S. v. Johnson* (D.C. Cir. 2008) 380 U.S. App.D.C. 218 [519 F.3d 478, 489].) Defendant does not explain how it can be that courts are deemed well equipped to ascertain the prejudicial effect of failing to disclose evidence tending to impeach an officer but must be deemed poorly equipped to ascertain the effect of failing to disclose the same information when it derives from confidential personnel files.

Finally, defendant contends that a heightened standard of prejudice—i.e., the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]—must be applied because a failure to disclose evidence helpful to the defense would impinge on his federal constitutional right to confrontation under the Sixth Amendment. He is mistaken. Even if relevant evidence that could have been used to impeach the deputies was wrongfully withheld, defendant suffered no restriction on the scope of their cross-examination and was free to cross-examine these witnesses on any relevant subject. "The constitutional error, if any, in this case was the Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination. As discussed above, such suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of a fair

trial. Consistent with 'our overriding concern with the justice of the finding of guilt,' [citation], a constitutional error occurs, and the conviction must be reversed, *only* if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." (*United States v. Bagley* (1985) 473 U.S. 667, 678 [87 L.Ed.2d 481, 105 S.Ct. 3375], italics added; see *Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 53 [94 L.Ed.2d 40, 107 S.Ct. 989] (plur. opn. of Powell, J.) ["The ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony."]; accord, *In re Brown* (1998) 17 Cal.4th 873, 884 [72 Cal.Rptr.2d 698, 952 P.2d 715].) Because that is precisely the standard employed by the Court of Appeal (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052] ["A reasonable probability is a probability sufficient to undermine confidence in the outcome."]), no error appears.

### DISPOSITION

We modify the judgment of the Court of Appeal to delete the direction that the judgment "shall stand affirmed" if the trial court's inspection of the requested personnel records on remand reveals no relevant information. As so modified, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.