[No. E047284. Fourth Dist., Div. Two. Feb. 9, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RUSSEL DAVID SANDERSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

COUNSEL

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MILLER, J.**—A jury convicted defendant Russel David Sanderson of two counts of criminal threats (counts 1 & 2—Pen. Code, § 422).[1] In a bifurcated proceeding thereafter, the court found true allegations that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)). On appeal defendant makes two contentions: (1) the court erred in finding that he failed to demonstrate good cause for the court to conduct an in camera review of the arresting officers' personnel files pursuant to defendant's *Pitchess*[2] motion, and (2) the court erred in denying his section 1118.1 motion for acquittal on count 1. We affirm the judgment in full.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 11, 2008, defendant called Lorraine Silverman on her cell phone. Defendant had previously lived with his girlfriend at Silverman's

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

home for two months. Defendant informed Silverman that her son, Jordan, owed him $20 and he wished to come over to collect it. Silverman told him to come over.

Silverman's friend, Michael Simmons, was at the home when defendant arrived. After defendant entered the home, Jordan declared that he did not owe defendant $20; rather, he insisted that defendant owed him money. The conversation became heated and Simmons told defendant to leave. Defendant struck Simmons with his right hand, causing a scratch on Simmons's face. The two then engaged in "mutual combat." Simmons testified that, before defendant ran out the door, he exclaimed that "he was going to come back . . . with his homeboys to kill [them] with guns." Silverman testified defendant said that "he was going to go to the hood, and, he was going to shoot all of [their] windows out, and he was going to take care of [them]— take [them] out." Silverman interpreted defendant's remarks as a threat to kill them.

Simmons called 911, "[b]ecause [he] was frightened that [defendant] was sincere to his words." Silverman testified that she was frightened. She believed that defendant was capable of carrying out his threat because she had seen defendant with a weapon before. The police responded to the residence.

While the police were at Silverman's home, her phone rang.[3] The phone was on "loudspeaker," so everyone in the room could hear the conversation. It was defendant; he "was being threatening." Silverman testified defendant stated, " 'I'm going to . . . kill you. . . . I'm going to take you out.' " Officer Purcell testified that he heard the voice say he would " '[b]e back tonight to kick your ass, and we got guns, and we'll be back.' "

Officer McGinnis then took the phone and asked defendant where he was.[4] Defendant replied by giving the officer his cross-streets. The officers responded to the location where they contacted defendant.

At trial, the People elected to use the threats made during the phone call, not those made earlier at the house, as the basis for counts 1 and 2. Thus, the

---

[3] Simmons testified that Silverman was already on the phone when the officers arrived. Silverman testified that Simmons answered the phone after the police arrived. Officer Purcell, one of the responding officers, testified that Silverman answered the phone while the police were already there, informed the officers it was defendant, and put the call on speakerphone at the officers' insistence.

[4] Simmons testified that Officer McGinnis pretended to be Simmons when he spoke to defendant on the phone. Officer Purcell testified that Officer McGinnis did not pretend to be Simmons, but did not identify himself; he merely asked defendant where he was.

jury was instructed with CALCRIM No. 3502 which provided, "You must not find the defendant guilty of criminal threat[s] as charged in Counts 1 and 2 or the lesser included offense of attempted criminal threat[s] unless you all agree that the People have proved specifically that the defendant committed that offense as alleged on January 11, 2008, by the statements made by telephone."

## II.

### DISCUSSION

#### A. Pitchess *Motion*

##### 1. *Facts*

Prior to trial, defendant filed a *Pitchess* motion seeking disclosure of the personnel records of Officers Purcell and McGinnis. In particular, defendant sought "any documents discussing, mentioning, pertaining or relating to reports, complaints, or investigations of: [¶] a. Dishonesty; [¶] b. Falsifying police reports." In defense counsel's attached declaration he stated his belief that Officer Purcell had falsified information contained in his police report of the incident. Specifically, defense counsel noted that Officer Purcell's report indicated that both he and Officer McGinnis had heard defendant make threats while on the speakerphone with Silverman. Defendant denied making the statement attributed to him by Officer Purcell. Thus, defense counsel averred that "records of dishonest[y] and fabrication [by] Officers McGinnis and Purcell would be relevant to disprove that the statements were made." No police report was attached to the motion.

In their opposition to defendant's motion, the People specifically and repeatedly objected to the fact that defendant had not attached the police report; thus, they contended that defendant had failed to make a threshold showing of good cause. The People asserted that "a declaration without the police report is deficient for a good cause showing under Evidence Code § 1043."[5] Assuming the court found defendant's failure to attach the police report excusable or remediable, the People argued that the request was too broad.

At the hearing on defendant's *Pitchess* motion, defense counsel requested that the court take judicial notice of Officer Purcell's testimony at the

---

[5] Evidence Code section 1043 does not expressly provide that the police report must be attached to the motion; however, in our review of the *Pitchess* case law, which has been substantial, we have found no published case where it was not attached.

preliminary hearing regarding the threat—specifically, that he heard defendant say, " 'We have got guns, and we will be back.' " The court stated, "I don't have objection to take notice of a line testified to at the preliminary hearing just as corroboration to your statement of facts in the motion for that limited basis." The People objected.

Nonetheless, the court ruled, "It's what he asserts in his factual basis that the officer's report says. That's the statement that the officer heard that was made, and the officer testified in accordance in a way that really doesn't change anything, but I'll note your objection but still take judicial notice of it."[6]

The People then argued that defendant's factual scenario was not plausible and that his request was overbroad in asking for items of all dishonesty and in asking for Officer McGinnis's personnel records. The court denied the motion without conducting an in camera review of the files: "[T]he concern of the Court is that if this were to constitute a plausible basis for release of these records, then any time a defendant says, 'I didn't say that,' their peace officer records concerning dishonesty would be discoverable, and I do not believe for one moment that's what this case law contemplates. This is merely a credibility question. [¶] The officer says, 'This is what I heard.' [¶] The defendant saying, 'I never said that.' [¶] If that could be the basis for a *Pitchess* motion to discover records, that could happen in every single case. And, as such, I do believe it is overbroad. I don't believe it's adequately supported by factual details which would make the records pertinent or discoverable under the *Pitchess* procedure. As such, the motion to disclose is denied."

### 2. *Analysis*

A trial court's ruling on a *Pitchess* motion is based on the trial court's sound discretion and is reviewable for abuse. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039 [130 Cal.Rptr.2d 672, 63 P.3d 228].)[7]

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel

---

[6] To the extent that a defendant is required to attach the police report to a *Pitchess* motion, it would appear that the court's taking judicial notice of Officer Purcell's testimony at the preliminary hearing remedied defendant's failure to do so in this case. The People do not argue otherwise.

[7] Although defendant contends this case may be reviewed de novo on appeal, we note that the cases defendant cites for this proposition do not apply here. *City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64 [56 Cal.Rptr.2d 723] applies de novo review to the interpretation of a labor contract. (*Id.* at p. 70.) *Cho v. Superior Court* (1995) 39 Cal.App.4th 113 [45 Cal.Rptr.2d 863] is a case of first impression regarding a writ proceeding on a motion to disqualify a law firm. (*Id.* at p. 119.)

records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179 [92 Cal.Rptr.3d 627, 205 P.3d 1074].)

The defendant does not need to corroborate or show motivation for the alleged officer misconduct, but must provide " 'a plausible scenario . . . that might or could have occurred.' [Citation.] A scenario is plausible when it asserts specific misconduct that is both internally consistent and supports the proposed defense. [Citation.]" (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71 [63 Cal.Rptr.3d 948, 163 P.3d 939].)

██ "[D]efendant need demonstrate only 'a logical link between the *defense* proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events' [citation]." (*People v. Gaines, supra*, 46 Cal.4th at p. 182, italics added.) The inquiry does not involve "an assessment or weighing of the persuasive value of the evidence . . . presented [or] which should have been presented. [Citations.] Indeed, a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive." (*Ibid.*) "If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.]" (*Id.* at p. 179.)

██ Here, the trial court could reasonably conclude that defendant failed to demonstrate sufficient good cause insofar as defendant "did not present a specific factual scenario that is plausible when read in light of the . . . undisputed circumstances." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316 [46 Cal.Rptr.3d 884] (*Thompson*).) Officer Purcell apparently stated in his police report, and testified at the preliminary hearing, that he heard defendant state over the phone to Simmons and Silverman that defendant was going to come back with his friends and " 'kick their ass.' " Officer Purcell alleged he further heard defendant state "we got guns and we'll be back." This statement formed the core of the charges against defendant. However, defendant simply denied making the statement attributed to him; he did not deny making the phone call or engaging in a telephonic conversation with Simmons and/or Silverman at the time the police were

present at the house.[8] Defendant failed to present "an alternate version of the facts" regarding the reason and nature of his telephonic exchange with Simmons and Silverman. (*Id.* at p. 1318.) Therefore, the trial court acted within its discretion to the extent that it made a "common sense" determination that defendant's version of events was not plausible "based on a reasonable and realistic assessment of the facts and allegations." (*Id.* at p. 1319.)

We find *Thompson* particularly instructive. There, an undercover police officer arrested the defendant after purchasing drugs from him. (*Thompson, supra,* 141 Cal.App.4th at p. 1315.) The defendant filed a *Pitchess* motion, seeking discovery of the personnel records of numerous officers involved in the undercover sting operation. In that motion, the defendant simply denied all the allegations contained in the police report. The court denied the motion determining that the defendant failed to show good cause to compel it to conduct an in camera review of the documents. (*Thompson,* at pp. 1315–1317.) The appellate court agreed, holding that the defendant failed to provide a factual showing that was "plausible by any rational standard." This was because the defendant did not "present a factual account of the scope of the alleged police misconduct, and [did] not explain his own actions in a manner that adequately support[ed] his defense." (*Id.* at pp. 1315, 1317.) This is precisely the case here. Indeed, if anything, defendant here presented less of an explanation of the factual circumstances surrounding the alleged offenses than did the defendant in *Thompson.*

*Warrick v. Superior Court* (2005) 35 Cal.4th 1011 [29 Cal.Rptr.3d 2, 112 P.3d 2] is distinguishable. There, three officers noticed the defendant standing next to a wall in an area known for violent crime and drug activity. (*Id.* at p. 1016.) The defendant was looking at a clear plastic bag in his hand containing " 'off-white solids.' " The officers exited their patrol car; the defendant fled, dumping copious amounts of "off-white lumps" on the ground. One of the officers retrieved 42 such "lumps." (*Ibid.*) The defendant was in possession of an empty plastic bag when arrested, and was charged with possession of cocaine for sale. (*Id.* at pp. 1016–1017.)

There, the defendant filed a *Pitchess* motion seeking release of any prior citizen complaints against all three officers for making false arrests, false police reports, or planting evidence. (*Warrick v. Superior Court, supra,* 35 Cal.4th at p. 1017.) In defense counsel's attached declaration, he averred that the defendant had run from the police due to an outstanding parole warrant, while "there were 'people pushing and kicking and fighting with each other'

---

[8] Although at trial, during defendant's case, a witness testified that Silverman and/or her husband initiated the phone call to the defendant, during which they threatened him.

as they collected from the ground objects later determined to be rock cocaine. After two officers retrieved some of the rocks, an officer told defendant, ' "You must have thrown this." ' " (*Ibid.*) "[The d]efendant denied possessing or discarding any rock cocaine." He contended that, not knowing who discarded the cocaine, the officers must have speculated that he was responsible because he ran. (*Ibid.*) The trial court denied the motion. (*Id.* at p. 1018.) The appellate court affirmed, holding that, although the defendant had presented a specific factual scenario of police misconduct, he failed to articulate a plausible factual foundation. The California Supreme Court reversed the judgment of the appellate court, holding that the defendant's version of events was plausible, requiring in camera review of the officers' personnel files. (*Id.* at pp. 1018, 1027.)

However, contrary to the circumstances of the present case, the defendant in *Warrick* "did not merely make bald assertions that denied the elements of the charged crime. He provided an alternate version of the events that was plausible, if not entirely convincing. The defendant presented a 'specific factual scenario' that explained his presence in the area, his running from the police, and a reason for the police to conclude that he had discarded the rock cocaine they recovered. And the scenario supplied, at least by inference, an explanation for the cocaine being on the ground, namely that others had discarded it to avoid arrest." (*Thompson, supra*, 141 Cal.App.4th at p. 1318.) Here, defendant presented no such alternative, specific, factual scenario.

The People additionally cite *People v. Hustead* (1999) 74 Cal.App.4th 410 [87 Cal.Rptr.2d 875], in order to distinguish the present case. In *Hustead*, an officer initiated a traffic stop of the defendant. The defendant failed to yield. The officer testified that he was subsequently involved in a pursuit of the defendant in which the defendant committed numerous traffic violations, collided with another vehicle, and nearly struck two pedestrians. (*Id.* at p. 413.) The defendant filed a *Pitchess* motion seeking discovery of the officer's personnel records for material relevant to whether he had been accused of falsifying reports in the past. (*Hustead*, at pp. 415–418.) The defendant averred, via defense counsel declaration, that he did not drive dangerously and did not drive the route alleged by the officer; hence, he maintained the officer's report contained material misstatements and false accusations. The trial court denied the defendant's motion. (*Id.* at pp. 416–417.) The appellate court reversed, holding that the defendant's "allegations were sufficient to establish a plausible factual foundation for an allegation that the officer made false accusations in his report." (*Id.* at p. 417.) Thus, unlike defendant in the present case, but similar to the defendant in *Warrick*, the defendant in *Hustead* presented a plausible alternative factual scenario rather than merely denying the elements of the charge against him. The trial court's ruling was within its discretion.

B. *Section 1118.1 Motion*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

## DISPOSITION

The judgment is affirmed.

McKinster, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 9, 2010, S181165.

---

\*See footnote, *ante*, page 1334.