Filed 4/23/21  P. v. Martinez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FREDDIE MARTINEZ, JR.,<br><br>    Defendant and Appellant. | G058995<br><br>(Super. Ct. No. 19CF1910)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

## INTRODUCTION

Defendant Freddie Martinez, Jr., challenges his convictions for aggravated assault on a peace officer, brandishing a deadly weapon to resist arrest, and resisting and obstructing a peace officer.

The trial court denied defendant's motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to review the personnel files of two of the police officers involved in the incident. The court did not err in finding that defendant had not made the necessary showing of good cause.

During the trial, one of the officers testified that defendant "assaulted" her during the incident. Even if the trial court erred in admitting the testimony, the evidence against defendant was so strong that there is no reasonable probability that he would have obtained a more favorable outcome in the absence of the error.

Substantial evidence supported the convictions for aggravated assault on a peace officer and brandishing a deadly weapon to resist arrest. Three of the police officers involved in the incident testified at trial and the videos from their body cameras corroborated their testimony.

Finally, the trial court did not err in refusing defendant's proposed pinpoint instruction because the content of that instruction was covered by the standard instruction which was given to the jury.

Concluding that none of defendant's arguments has merit, we affirm the judgment of conviction.


## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 9, 2019, Tustin Police Department Officers Charles Mitchell and Michelle Jankowski responded to a call reporting trespassing at the Tustin Marine Corps Air Station. The dispatcher told the officers a man had been seen jumping over the air station fence and trying to enter a building. When the officers arrived at the scene, they

saw a woman jump over a fence from the air station to the street. The woman told them that there were at least two or three other people in a brown building inside the air station. The officers detained the woman and called for backup. Officers Cody Clay and Colton Kirwin responded to the scene; Officer Mitchell remained outside with the detained female, and the three other officers entered the air station.

Officers Jankowski, Clay, and Kirwin announced themselves and entered the brown building. After they had cleared the first floor, Officer Mitchell entered the brown building to assist in clearing the second floor. Officers Mitchell and Jankowski went up a back staircase to conduct a search of the second floor while Officers Clay and Kirwin maintained their position on the first floor.

At that point, defendant appeared at the top of an internal stairway near Officers Clay and Kirwan, carrying what appeared to be a metal-tipped spear, saying things like, "This is my house," "Do you have a warrant?" and "Are you allowed to be here?" Defendant was being aggressive, yelling, and making irrational statements. Defendant was holding what was later identified as a metal pipe as if he were preparing to throw it or use it as a weapon. The officers repeatedly told him to put the pipe down. Officer Kirwan radioed to Officers Mitchell and Jankowski that there was a suspect with a pipe. Defendant then walked back up the stairs, into a room, and shut the door behind him.

Officers Mitchell and Jankowski announced themselves as they reached the second floor from the back area of the building. Officer Jankowski made contact with Patricia Ratliff, defendant's girlfriend, in a room on the second floor. As Officer Jankowski attempted to handcuff Ratliff, defendant entered the room holding a metal pipe, which was about two feet long. Defendant was about five or six feet away from the officers, began screaming at them, and had an angry look on his face. Defendant was holding the pipe like a baseball bat.

Officers Mitchell and Jankowski believed they were in danger. Jankowski testified she believed she had been assaulted by defendant "because the distance between me and him, he could have struck me with the pipe and the pipe alone is a threatening manner [*sic*] with how large it was."[1] Officer Jankowski believed defendant could have struck her with the pipe based on the distance between them. Defendant closed the door to the room, then turned back to face the officers; he was standing between the officers and the door. The room became darker after the door was closed. The officers ordered defendant to drop the pipe multiple times, but he failed to comply. Defendant did not comply with their orders despite the fact both officers were pointing their guns at him; he was yelling and being aggressive and appeared ready to fight.

Both officers believed defendant was going to assault them and were in fear for their safety. Officer Mitchell fired his gun at defendant three times, and Officer Jankowski fired her gun at defendant one or two times. (The appellate record does not reveal the extent of defendant's injuries.) Defendant lowered the pipe to his side just before the shots were fired. Officer Mitchell testified that by brandishing the pipe, defendant was preventing him and Officer Jankowski from performing their duties. Officer Jankowski testified defendant was a threat to her, her partner, and Ratliff.

Ratliff testified that she and defendant were staying in a vacant building at the air station in July 2019. On July 9, they heard a noise and defendant went to see where it was coming from, taking with him a metal pipe the couple used as a bar to lock the door. Ratliff began to follow defendant and then saw police officers pointing their guns at defendant, yelling, "Hey, put it down." Two other officers burst into the room through another door, and defendant came back into the room saying, "What's going on?" The officers who had entered the room were yelling "put it down" and pointing

---

[1] The trial court overruled defendant's counsel's objections that Jankowski's testimony lacked foundation or called for a conclusion.

4

their guns at defendant. Ratliff told defendant to put down the pipe and backed out of the room. She then heard gunfire, but did not actually see the shooting.

Defendant was charged in an information with two counts of aggravated assault on a peace officer (Pen. Code, § 245, subd. (c) [counts 1 and 2]), two counts of exhibiting a deadly weapon to resist arrest (*id.*, § 417.8 [counts 3 and 4]), and one count of resisting and obstructing an officer (*id.*, § 148, subd. (a)(1) [count 5]). The information alleged defendant had a prior prison conviction and had not remained out of custody for five years before the commission of the present offenses. (*Id.*, § 667.5, subd. (b).) A jury found defendant guilty of all counts.

Defendant was sentenced to a term of five years four months in prison: the midterm of four years on count 1 and a term of 16 months on count 2. The trial court stayed execution of sentence on counts 3 and 4 pursuant to Penal Code section 654, and suspended the sentence on count 5. This appeal followed.

DISCUSSION

I.

THE TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S *PITCHESS* MOTION.

Before trial, defendant sought discovery of the personnel records of Officers Mitchell and Jankowski, pursuant to *Pitchess, supra*, 11 Cal.3d 531. The trial court denied the motion without conducting an in camera review of the documents. We review the trial court's order for abuse of discretion. (*People v. Cruz* (2008) 44 Cal.4th 636, 670.) This standard of review determines the result here because the decision whether to permit the review of records by the trial court is a close call in this case.

A *Pitchess* motion must be supported by "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the

5

governmental agency identified has the records or information from the records." (Evid. Code, § 1043.)

"[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.'" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)

While a defendant need not corroborate or show motivation for the alleged officer misconduct, he or she must provide "'a plausible scenario . . . that might or could have occurred.' [Citation.] A scenario is plausible when it asserts specific misconduct that is both internally consistent and supports the proposed defense." (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71.)

"[D]efendant need demonstrate only 'a logical link between the defense proposed and the pending charge' and describe with some specificity 'how the discovery being sought would support such a defense or how it would impeach the officer's version of events.'" (*People v. Gaines, supra*, 46 Cal.4th at p. 182.) The trial court's inquiry does not involve "an assessment or weighing of the persuasive value of the evidence . . . presented [or] which should have been presented. [Citations.] Indeed, a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive." (*Ibid.*) "If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed." (*Id.* at p. 179.)

Defendant's attorney's declaration in support of the *Pitchess* motion alleges that defendant complied with the officers' orders, did not threaten the officers, and did

6

not hold the pipe in a batter's stance, and that the officers' body camera videos would verify defendant's account of the incident. The attorney further alleged that the defense at trial would be that the officers fabricated the reasons they shot defendant, used excessive force, and made false statements. Therefore, the attorney argued, the officers' personnel records would be relevant to the defense to the extent they showed the officers had previously lacked credibility, engaged in use of excessive force, filed false police reports, provided false testimony, or committed crimes of moral turpitude.

At the hearing on the *Pitchess* motion, the trial court questioned whether defendant's compliance with the officers' orders or the officers' use of excessive force was relevant or material. As the court explained: "[The defense of whether or not defendant assaulted the officers] has nothing to do with force because the assault happens before the force was used. In other words, the crimes, more or less, have been committed prior to the shooting."

Ultimately, in exercising its discretion, the trial court denied the motion because defendant had failed to establish that the officers' personnel records were relevant or material to any potential defense. "[T]he defense has failed to present a specific factual scenario that establishes a plausible factual foundation to support an allegation that would warrant the court to review the officers' personnel files. The three sentences in the declaration itself claiming that the officers lied and/or falsified their reports is not [a] sufficient, specific factual scenario, but rather denials that the officers stated and conclusions stating that the officers merely lied, a conclusion not backed by really a specific factual scenario, nor does it appear to be backed by the video. The court feels it is not enough to warrant a review of the officers' files."

Our review is guided in large part by the appellate decisions in *People v. Sanderson* (2010) 181 Cal.App.4th 1334 (*Sanderson*), and *People v. Thompson* (2006) 141 Cal.App.4th 1312 (*Thompson*). In *Sanderson*, the defendant was convicted of making criminal threats; two police officers heard the defendant make the threats.

(*Sanderson, supra*, at p. 1337.) The defendant claimed he did not make the threats and sought the officers' personnel records to support his defense that the officers had falsified their police reports. (*Id.* at p. 1338.)

The trial court denied the defendant's *Pitchess* motion without conducting an in camera hearing, finding that the defendant had failed to establish good cause: "'[T]he concern of the Court is that if this were to constitute a plausible basis for release of these records, then any time a defendant says, "I didn't say that," their peace officer records concerning dishonesty would be discoverable, and I do not believe for one moment that's what this case law contemplates. This is merely a credibility question. [¶] The officer says, "This is what I heard." [¶] The defendant saying, "I never said that." [¶] If that could be the basis for a *Pitchess* motion to discover records, that could happen in every single case.'" (*Sanderson, supra*, 181 Cal.App.4th at p. 1339.)

The appellate court held that the defendant's denial of the statements attributed to him, without the presentation of "'"an alternate version of the facts"'" was insufficient to demonstrate good cause on the *Pitchess* motion. (*Sanderson, supra*, 181 Cal.App.4th at pp. 1340-1341.)

In *Thompson, supra*, 141 Cal.App.4th at page 1315, the defendant was arrested after purchasing drugs from an undercover police officer. The defendant denied the statements in the police report and sought the personnel records of the officers involved. (*Id.* at pp. 1315, 1317.) The appellate court affirmed the trial court's denial of the defendant's *Pitchess* motion, without conducting an in camera review of the records, because the defendant had failed to "present a factual account of the scope of the alleged police misconduct, and [did] not explain his own actions in a manner that adequately support[ed] his defense." (*Id.* at p. 1317.)

Using the analysis of *Sanderson* and *Thompson*, we conclude that the trial court did not err by denying defendant's *Pitchess* motion without conducting an in camera review of the documents requested. Defendant failed to establish good cause

for the motion because the personnel records sought were not relevant to any plausible defense, given that even if excessive force had been used it occurred after the alleged assault, and the body camera videos showed not only defendant's actions but the officers' response to those actions. The trial court's findings were within its discretionary authority.

II.

ADMISSION OF THE OFFICER'S OPINION THAT DEFENDANT HAD ASSAULTED HER WAS NOT PREJUDICIAL.

Defendant argues that the trial court prejudicially erred by permitting Officer Jankowski to offer a lay opinion that defendant assaulted her. The trial court has broad discretion to admit or exclude lay opinion testimony, and we review to determine whether the court abused that discretion. (*People v. Maglaya* (2003) 112 Cal.App.4th 1604, 1609; see *People v. Ramirez* (2021) 10 Cal.5th 983, 1028 [trial courts have "wide discretion" regarding admissibility of evidence].)

On direct examination, Officer Jankowski testified as follows, with the challenged testimony italicized:

"Q. And what was his demeanor when he first entered the room?

"A. Aggressive.

"Q. What was he doing that you think that he was aggressive?

"A. *He had the pipe up in what I deem as a batter's stance.* I believe he was yelling something, but I couldn't make out what he was yelling at the time.

"Q. And at this point did you feel like you were in danger?

"A. Yes.

"Q. Why did you feel like you were in danger at this point?

"A. He had a metal pipe that was three feet long. We are trained that if there is a short distance, like there was in that room, that it can do harm to us. It could potentially kill us.

9

"Q.  And when he first walked in the room, your gun was holstered, correct?

"A.  Yes.

"Q.  Did that heighten your safety risk?

"A.  Absolutely.

"Q.  And why?

"A.  Because now I have to redraw my weapon in order to engage a suspect.

"Q.  And, at that point, when he first walked in, how close did he get to you when he first walked in that room?

"A.  The only distance between me and him was Patricia between us.

"Q.  And do you know if those two made contact, Patricia and the defendant?

"A.  I don't.

"Q.  And what did you do when you saw defendant walk in the room?

"A.  I retracted, so I went back to gain some distance between me and the suspect.

"Q.  And it looked like you were—you had Patricia's hands behind her back and you were about to handcuff her.  [¶] Do you know if you even had the handcuffs out at that point?

"A.  I don't believe I did.

"Q.  And so when that happened, did you jump back?

"A.  I would assume I did.

"Q.  [¶] . . . [¶] *At that moment when he came in with the pipe, before anything else, at that moment, did you feel that you had been assaulted by the defendant and the pipe?*

"A.  *Yes.*

10

"Q. *Why?*

"A. *Because the distance between me and him, he could have struck me with the pipe and the pipe alone is a threatening manner with how large it was.*

"[Defendant's counsel]: Objection. Lack of foundation. Calls for a conclusion.

"The Court: Hold on. Let me see. Overruled.

"[Prosecutor] [¶] Q. *The distance that he was when he first walked in the building or when he walked into that room, to you, did you believe that he could have struck you with a pipe from that distance that he was away from you?*

"A. *Yes.*" (Italics added.)

A witness may not express an opinion as to a defendant's guilt. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) In *People v. Torres* (1995) 33 Cal.App.4th 37, 47 to 48, cited by defendant, the Court of Appeal concluded that a police officer's opinion that the defendant's conduct constituted robbery was an inadmissible opinion of guilt.

The Attorney General argues that Officer Jankowski was testifying as a lay witness and testified to her own perception of defendant's actions and how those actions made her feel at the time. But if the witness's perception of the facts becomes a legal conclusion as to the issue of defendant's guilt, error may occur.

We need not decide whether the trial court erred, because any error was harmless. Whether an error in the admission or exclusion of evidence was prejudicial is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836: Is it reasonably probable defendant would have obtained a more favorable result in the absence of the error? (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 76.) Defendant argues that the jury "was led to erroneously believe [defendant] had assaulted Officer Jankowski based on her improper opinion testimony."

11

Absent Officer Jankowski's testimony that she felt she had been assaulted when defendant entered the room holding the pipe in a threatening manner from a position close enough to hit her, there was overwhelming evidence of defendant's guilt of all crimes charged. The testimony of Officers Mitchell, Jankowski, and Clay, combined with the video evidence from their body cameras, established the charges of aggravated assault as well as the charges of brandishing a deadly weapon. It is not reasonably probable defendant would have obtained a more favorable result as to any of the charges in the absence of Officer Jankowski's testimony that defendant had assaulted her.

III.

THERE WAS SUFFICIENT EVIDENCE OF AGGRAVATED ASSAULT
AND BRANDISHING A DEADLY WEAPON.

Defendant argues there was insufficient evidence to support his convictions for aggravated assault and brandishing a deadly weapon because the People failed to prove he used the pipe as a deadly weapon or in a manner that could have caused any injury to either Officer Jankowski or Officer Mitchell. In considering these arguments, we review the appellate record in the light most favorable to the judgment to determine whether it contains evidence that is of reasonable, credible, and solid value that the jury could find defendant guilty beyond a reasonable doubt. (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)

A metal pipe is not a deadly weapon as a matter of law. (*People v. Burton* (2006) 143 Cal.App.4th 447, 457.) The People were therefore required to prove beyond a reasonable doubt that defendant used the pipe in a manner that was capable of producing and likely to produce great bodily injury. (*In re B.M.* (2018) 6 Cal.5th 528, 533 (*B.M.*) [assault with a deadly weapon]; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1107 [brandishing a deadly weapon to prevent arrest].)

"'In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which

12

it is used, and all other facts relevant to the issue.'" (*B.M., supra*, 6 Cal.5th at p. 533.) The evidence in the present case shows that defendant was holding a two-foot-long pipe in the stance of a baseball batter, at a distance of five or six feet from Officers Jankowski and Mitchell. Defendant had closed the door behind him, both causing the room to become darker and making it more difficult to see, while blocking one of the means of escape from the room for both defendant and the officers.

Defendant argues that the People failed to meet their burden of proof because there was no evidence that defendant "actually used the pipe in a manner that was capable of producing and likely to produce death or great bodily injury. [Defendant] never attempted to hit either officer with the pipe and never made any movements as if he was going to hit the officers with the pipe." We disagree. Continuing to hold a metal pipe like a baseball bat in a darkened room within six feet of armed police officers shouting orders to drop the pipe constitutes actual use of the object in a manner capable of producing, and likely to produce, death or great bodily injury. The crimes charged do not require proof of an injury or even of physical contact. (*B.M., supra*, 6 Cal.5th at p. 535; *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Brown* (2012) 210 Cal.App.4th 1, 7 ["Because the statute speaks to the capability of inflicting significant injury, neither physical contact nor actual injury is required to support a conviction"].) We therefore conclude the convictions for aggravated assault and brandishing a deadly weapon were supported by substantial evidence.

IV.

THE TRIAL COURT DID NOT ERR BY DENYING DEFENDANT'S REQUEST
FOR A PINPOINT INSTRUCTION.

Defendant argues the trial court prejudicially erred by failing to instruct the jury with the following pinpoint instruction: "[W]hat likely to produce great bodily injury means, and that's the use of an object in the manner likely to produce death or great bodily injury requires more than a mere possibility that serious injury could have

13

resulted from the way the object was used." The defendant drew the language from *B.M.,* *supra*, 6 Cal.5th 528, and *People v. Aguilar, supra*, 16 Cal.4th 1023. The trial court denied the request on the ground the jury would be instructed with CALCRIM No. 860 and would thus be adequately instructed on the issue raised by defense counsel: "CALCRIM 860 clearly defines and addresses the issues that counsel indicated and that would encompass that case authority, if it is applicable to this particular case."

A pinpoint instruction, even if correct on the law, may be refused if it is duplicative. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 499.) Defendant's proposed pinpoint instruction added nothing to the standard instruction with which the jury was instructed.[2]

_____

[2] The jury was instructed with CALCRIM No. 860, as follows: "The defendant is charged in Counts 1 and 2 with assault with a deadly weapon on a peace officer in violation of Penal Code section 245(c). To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person . . . ;
  "Two, the defendant did that act willfully;
  "Three, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone . . . ;
  "Four, when the defendant acted, he had the present ability to apply force with a deadly weapon to a person;
  "Five, when the defendant acted, the person assaulted . . . was lawfully performing his or her duties as a peace officer;
  "Six, when the defendant acted, he knew or reasonably should have known that the person assaulted was a peace officer who was performing his or her duties;
  "And, seven, the defendant did not act in defense of someone else.
  "Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain any advantage. The People are not required to prove that the defendant actually touched someone. The People are not required to prove that the defendant actually intended to use force against someone when he acted. No one needs to actually have been injured by the defendant's act, but if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault.

In *B.M., supra*, 6 Cal.5th 528, the court noted: "The use of an object in a manner 'likely to produce' death or great bodily injury [citation] requires more than a mere possibility that serious injury could have resulted from the way the object was used." (*Id.* at p. 534.) In that case, the defendant used a butter knife and made downward slicing motions toward the victim's legs, which were covered by a blanket. (*Id.* at p. 531.) The victim felt pressure on her legs (*id.* at p. 532); everyone agreed the knife used was not sharp (*id.* at p. 531). The Supreme Court's reference to "more than a mere possibility of serious injury" addresses the specific facts of that case. (*Id.* at p. 534.) In contrast, in the present case the type of deadly weapon, the manner in which it was used, and the other circumstances surrounding the assault all established far more than a mere possibility of serious injury.[3]

Defendant also argues that the trial court erred by failing to modify the proposed instruction, assuming it was either incomplete or argumentative. The trial court explained why it was denying the requested pinpoint instruction—the standard jury instruction covered the issues the pinpoint instruction sought to address. Modification of the proposed instruction was therefore not required.

---

*"A deadly weapon is any object, instrument, or weapon that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. In deciding whether or not an object is a deadly weapon, consider all the surrounding circumstances."* (Italics added.)

[3] Even if the trial court erred by failing to instruct the jury with the proposed pinpoint instruction, the error would be harmless because the totality of the circumstances surrounding the crimes establishes far more than a "mere possibility" of serious injury. (See *B.M., supra*, 6 Cal.5th at p. 534.) There is no reasonable probability that defendant would have obtained a more favorable result in the absence of the alleged error. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 830-831 [failure to give pinpoint instruction reviewed for prejudice under *People v. Watson, supra*, 46 Cal.2d 818].)

15

**DISPOSITION**

The judgment is affirmed.


FYBEL, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.