Filed 1/28/14  P. v. Sellers CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BENNIE LEE SELLERS, <br><br> Defendant and Appellant. | F064145 <br><br> (Fresno Super. Ct. No. F10903486) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## BACKGROUND

Defendant was charged with being a felon in possession of a firearm (count I – former Penal Code[1] § 12021, subd. (a)(1)[2]) and ammunition (count II – former § 12316, subd. (b)(1)[3].)  Defense counsel stipulated to the prior felony conviction for purposes of the two charges.  After a jury convicted defendant on both counts, the court suspended sentence and placed defendant on three years' formal probation.[4]

## TRIAL EVIDENCE

<u>Prosecution Evidence</u>

Defendant and his wife, Sylvia Sellers, lived next door to Paula Lopez in a duplex. The two residences share a wall.  At 6:00 p.m. on June 20, 2010, Lopez left the duplex. She returned a few hours later and observed a hole in the shared wall.

Mrs. Sellers went to Lopez's residence.  Lopez had never spoken to her before. Mrs. Sellers told Lopez "it was an accident … her husband was picking up some weights and it fell and it made the hole."  Later, Mrs. Sellers told Lopez that "her husband was cleaning [a] pistol and that it had fallen."  She also told Lopez she would fix the hole and eventually did so.

Lopez found a bullet in her residence the day after the incident.  She was using a walker, and the bullet "got stuck" in it.

Lopez's landlord, Jesse Atkins, eventually found out about the damage after it had been repaired and called the police.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise noted.

[2] Section 12021, subdivision (1) has since been recodified as section 29800.

[3] Section 12316, subdivision (b)(1) has since been recodified as section 30305.

[4] A minute order from the sentencing hearing inaccurately indicates defendant was placed on nine years' probation.

On the afternoon of July 8, 2010, Police Officer Tim Sullivan was dispatched to Lopez's residence. Atkins had reported that defendant was on parole. However, while en route to the scene, Officer Sullivan checked and discovered that defendant was not on parole.

Officer Sullivan first met with Atkins. He then met with Lopez, who provided him with the bullet she had found. He asked why Lopez had not called the police earlier. Lopez said "she didn't want trouble[.]"

Mrs. Sellers asked Officer Sullivan if he could meet with defendant at the residence's side door "because of the nosey neighbors." Officer Sullivan spoke with defendant and told him he was investigating the hole in Lopez's wall. Defendant told Officer Sullivan that "he had had a firearm[,]" which he described as a black, semiautomatic gun. Defendant thought the firearm was a "Rueger [*sic*] nine-millimeter."

Defendant said he had received the firearm from a friend named Mark. Defendant said Mark had gone out of town and had asked defendant to hold onto the weapon. Defendant did not know Mark's last name and had no way of "getting ahold of him[.]"

Defendant told Officer Sullivan that he was manipulating the firearm, pulling the slide back when it discharged, and the bullet went into the wall.

After speaking with defendant, Officer Sullivan returned to his patrol car. Officer Sullivan called to check defendant's criminal history and discovered defendant had been convicted of a felony. Meanwhile, defendant had exited his residence and was driving away in a vehicle. Officer Sullivan exited his vehicle and stopped defendant. Defendant complied and was arrested.

Defendant would not allow Officer Sullivan to search his residence.

<u>Defendant's Testimony</u>

Defendant testified that an acquaintance named Mike came to his residence on June 20, 2010. Mike asked defendant if he could leave a loaded gun with him.

3.

Defendant said, "[Y]eah, go ahead and leave it, but make sure it's unloaded…." Without touching the gun, defendant then showed Mike how to unload it. While Mike was holding the gun, it discharged. Defendant then told Mike to leave with the gun, and Mike complied.

On July 8, 2010, defendant was served with eviction papers. Later that day, police officers arrived, and defendant spoke with them. Defendant never told Officer Sullivan that he had possession of a handgun.

On cross-examination, defendant testified that the gun "wasn't in my hand long enough to inspect serial numbers or anything…."

Prosecution's Rebuttal Evidence

Officer Sullivan testified on rebuttal that defendant never mentioned another person being present when the gun discharged, other than his wife.

Officer Miguel Archan also testified on rebuttal. He responded to the scene in July 2010 along with Officer Sullivan. Officer Archan does not recall defendant ever mentioning another party was present[5] or handled the gun when it discharged.

## DISCUSSION

### I. THE COURT SHOULD HAVE CONDUCTED AN IN-CHAMBERS REVIEW OF DOCUMENTS PURSUANT TO DEFENDANT'S *PITCHESS*[6] MOTION

#### A. BACKGROUND

Defendant filed a *Pitchess* motion alleging that law enforcement officers engaged in various forms of misconduct, entitling him to discovery of personnel files and related documents. Defendant's allegations of misconduct fell into three categories: (1) excessive force, (2) illegal search, and (3) misrepresentations of fact.

---

[5] Other than Mrs. Sellers.

[6] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

4.

Defendant argues the trial court abused its discretion when it denied the motion and refused to conduct an in-chambers review of the documents sought.

B. ANALYSIS

"To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation…." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1026 (*Warrick*).) Accordingly, the court is to ask whether defense counsel's affidavit "adequately responds" to the following questions: "Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense? Under what theory would the requested information be admissible at trial?..." (*Id.* at pp. 1026-1027.)

1. *Excessive Force Allegations*

Defense counsel's affidavit in support of the motion alleged that the arresting officer used excessive and illegal force against defendant during the arrest. It further alleges that "if" defendant used retaliatory force against the officer, "such force was in defense of the defendant's person against acts of excessive and illegal force used by the officer against the defendant in making an illegal arrest…." The affidavit does not allege that any portion of defendant's statements to Officer Sullivan resulted from excessive or unlawful force.

Defendant did not meet his burden to require in camera document review on this ground. The affidavit fails to "show[] a logical connection between the charges and the proposed defense[]" (*Warrick*, *supra*, 35 Cal.4th at p. 1027) of excessive force by the arresting officer. Defendant apparently sought discovery on this ground to explain,

justify or mitigate any force he used against the arresting officer.  But defendant was not charged with resisting arrest, battery, assault or any other offense related to his interaction with law enforcement officers. He was only charged with possessing a firearm and ammunition, which occurred weeks before any relevant interaction with police officers.  The affidavit thus establishes no connection – much less a logical one – between the charges and this proposed defense.

### 2. *Illegal Search Allegations*

The motion's supporting affidavit  also alleges that "the prosecution evidence in the instant case was obtained by means of illegal police conduct in violation of the Fourth Amendment guarantee against unreasonable searches and seizures."

Defendant did not identify any evidence that was purportedly obtained by an illegal search.[7]  In this respect, the affidavit did not show how the proposed defense (i.e., illegal search) related to the charges or the prosecution's evidence.  Nor does it "present … a *specific* factual scenario of officer misconduct .…"  (*Warrick*, *supra*, 35 Cal.4th at p. 1025, italics added.)

The court was not required to conduct an in-chambers review based on defendant's conclusory illegal search allegations.

### 3. *Factual Misrepresentation Allegations*

Defense counsel's affidavit further alleges that "Officer Timothy Williams [*sic*] either intentionally or negligently misstated statements made to him by Defendant." Defendant's points and authorities set forth two instances in which Officer Sullivan allegedly misrepresented facts.

First, defendant contended that Officer Sullivan misstated his own observations of defendant's driving:

---

[7] The undisputed testimony at trial established that law enforcement did not search defendant's residence.

"In this action the officer made material misstatements with respect to his observations, including fabricating appellant's alleged dangerous driving maneuvers. He also states that Defendant asserts that he did not drive in the manner described by the report and that his driving route was different from that found in the report…."

This theory falls prey to the same flaw that plagued defendant's other contentions. The motion offers no logical connection between this proposed defense (i.e., Officer Sullivan fabricated observations of defendant's driving) and the charges (i.e., felon in possession of firearm, ammunition).

Moreover, the affidavit mischaracterizes the police report on this issue, which does not describe defendant's driving as dangerous. Thus, when this allegation is viewed in conjunction with the police report, it does not suffice to " 'establish a plausible factual foundation' for the alleged officer misconduct …." (*Warrick*, *supra*, 35 Cal.4th at p. 1025.)

Second, defendant contended that Officer Sullivan misrepresented defendant's statements regarding possession of the firearm:

"After arriving [at defendant's residence, Officer Sullivan] knocked on [defendant's] front door and began a short conversation with [defendant]. [Defendant] said about two weeks earlier, an acquaintance came to his door and requested [defendant] keep a weapon for him while the acquaintance was out of town. [Defendant] told the acquaintance to unload the weapon and while the acquaintance was in the process of emptying the pistol, it accidentally discharged. The police report misreported these facts."

Unlike the other grounds offered by defendant,[8] this theory is logically related to the charges and supporting evidence. Officer Sullivan's recollection that defendant admitted possessing the weapon was crucial evidence related to the charged offenses. If

---

[8] This one legitimate ground for performing an in chambers document review was presented in defendant's moving papers alongside the meritless contentions we addressed above. It saves time and effort when advocates make their strongest arguments to busy trial courts without the distracting influence of meritless ones.

Officer Sullivan fabricated portions of defendant's statement, [9] such misconduct would be highly relevant to the defense. Because defendant's assertion is "internally consistent and supports the defense proposed to the charges[,]" and the information sought could potentially be admissible (*Warrick*, *supra*, 35 Cal.4th at p. 1026), the trial court should have conducted an in camera review.

### C. DIRECTIONS ON REMAND

We therefore conditionally reverse the judgment. The trial court is to review the requested documents in chambers on remand. (See *People v. Gaines* (2009) 46 Cal.4th 172, 180.) If the court determines the requested personnel records contain no relevant information, it shall reinstate the judgment. (See *id*. at p. 181.) If the court determines that relevant information exists and should be disclosed, the trial court must order disclosure and provide defendant an opportunity to demonstrate prejudice. (See *ibid*.) If there is a reasonable probability the outcome of trial would have been different if the information had been disclosed, the trial court is directed to order a new trial. (See *ibid*.)

## II.     THE PROSECUTION DID NOT VIOLATE THE CORPUS DELICTI RULE

Defendant next contends the prosecution failed to prove the corpus delicti of the charged offenses apart from defendant's extrajudicial statements. We disagree.

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself - i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. [T]he prosecution cannot satisfy this burden by relying *exclusively*

---

[9] We emphasize that the relevant standard is not whether defendant's version of events is "persuasive." (*Warrick*, *supra*, 35 Cal.4th at p. 1026.) Indeed, his contentions would not survive application of such a standard. We see nothing in the record, apart from defendant's unsubstantiated allegations, to suggest Officer Sullivan actually engaged in any misconduct whatsoever. But, the relevant question is whether the defendant's assertion of misconduct is "internally consistent and supports the defense proposed to the charges." (*Ibid*.) Defendant's contention satisfies this lower burden.

upon the extrajudicial statements, confessions, or admissions of the defendant. [Citaitons.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169, original italics.) But, the inference that a crime occurred need not be the only one suggested by the evidence. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 722.) The independent proof is sufficient "even if a noncriminal explanation is also plausible. [Citations.]" (*People v. Alvarez*, *supra*, at p. 1171.)

Here, the "fact of injury, loss or harm" was supported by Ms. Lopez's testimony regarding the wall damage. The "existence of a criminal agency as [the] cause" of the harm was also suggested by the independent evidence. Ms. Lopez's discovery of the bullet in her residence and the location of the damage gave rise to an inference that a gun was discharged in defendant's residence. And, Mrs. Sellers's conflicting stories about how her husband caused the wall damage gave rise to an inference that she was nervous about her husband's involvement in causing the damage.[10] In sum, this evidence was at least a "slight … showing of … harm by a criminal agency,…" (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1171) which is all that is required.

### III. THERE WAS SUFFICIENT EVIDENCE DEFENDANT KNEW THE GUN WAS LOADED

Defendant next contends there was insufficient evidence he knew the gun was loaded when it discharged. Therefore, he contends his conviction on count II should be reversed. We disagree.

Defendant testified that he knew the gun was loaded when Mike brought it to his residence. Defendant claimed he then showed Mike how to unload the gun without touching it himself. While Mike was unloading the gun, it discharged. In contrast,

---

**10** While these statements were not admitted for their truth, they were admitted for their bearing on Mrs. Sellers's state of mind. (See Evid. Code § 1250.) It is the evidence of Mrs. Sellers's conduct and state of mind that supports the prosecution's corpus delicti showing here.

9.

Officer Sullivan testified that defendant admitted *he* was the one manipulating the firearm when it discharged.

The jury could have believed defendant's testimony he knew the gun was loaded, but rejected the remainder of defendant's account in favor of Officer Sullivan's testimony. That is, the jury could have concluded defendant knew the gun was loaded, and was attempting to unload it *himself* when it discharged. We will not overturn this conclusion, especially considering that Officer Sullivan's testimony presented the more plausible scenario.

We reject defendant's challenge to the sufficiency of the evidence supporting count II.

## IV.    PROBATION REPORT

Defendant contends the court improperly imposed fees under section 1203.1b without conducting a hearing to determine whether he had the ability to pay the fee. Defendant forfeited this challenge by failing to object or request a hearing. (See generally *People v. Snow* (2013) 219 Cal.App.4th 1148.)

### DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. (See, *ante*, Discussion § I.C.)


_____
Poochigian, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Kane, J.

10.