Filed 6/18/14  P. v. Cleveland CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LARRY CLEVELAND,<br><br>    Defendant and Appellant. | B246750<br><br>(Los Angeles County Super. Ct. Nos. NA087034 & NA087429) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mark C. Kim, Judge.  Affirmed.

Joshua A. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Larry Cleveland appeals from his conviction on multiple drug-related counts.[1]  His sole contention is that the trial court erred in limiting his *Pitchess* discovery to complaints alleging falsification of probable cause.[2]  Defendant also requests that we independently review the in camera *Pitchess* proceedings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *First Incident – October 1, 2010*
### *Counts 1 and 2:  Transportation and Possession for Sale of a Controlled Substance*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357–358), the evidence established that at about 2:15 p.m. on October 1, 2010, Long Beach Police Officers Eric Fernandez and Rudolfo Rodriquez, were in uniform on bicycle patrol in a strip mall parking lot on the corner of Anaheim and Atlantic Boulevards.  The location was known for its high incidence of drug trafficking. Fernandez observed defendant standing in front of a donut shop "either shaking another gentleman's hand or doing a hand-to-hand transaction."  Fernandez and Rodriguez rode toward defendant.  Defendant looked at them, then ran into the donut shop through one door and out another.  Both officers gave chase, with Rodriguez in the lead.  Rodriguez activated the lights and siren on his bicycle and at least twice commanded defendant to stop.  During the pursuit, defendant looked back at the officers, but ignored their repeated command to stop.  Defendant ran across Atlantic Boulevard against a red light, then

---

[1]     All undesignated statutory references are to the Penal Code.  Defendant was charged by second amended information with  transportation of hydrocodone (count 1), possession for sale of hydrocodone (counts 2 and 3), possession for sale of codeine (count 4), possession for sale of diazepam (count 5) and resisting arrest (counts 6 and 7); prior convictions were alleged pursuant to Health and Safety Code section 11370.2, subdivision (a), Penal Code section 667.5, subdivision (b) and the Three Strikes law (§ 1170.12, subds. (a)-(d), § 667, subds. (b)-(i)).  A jury convicted defendant on all counts.  The trial court subsequently found true the alleged priors.  It denied defendant's motion to strike the Three Strikes priors.  Defendant was sentenced to a total of 23 years in prison.  Defendant timely appealed.

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

sprinted up the block and into an auto parts store. As Fernandez entered the auto parts store behind Rodriquez, he saw defendant pulling back his hand, which had been extended over a shelf. Defendant was handcuffed and searched. Fernandez found 16 loose pills which appeared to be Vicodin and one pill which appeared to be Viagra in defendant's right front pants pocket; Fernandez also found a cell phone. When defendant was strip searched at the police station, $385 in currency was found concealed in his groin area. Fernandez booked the pills, cell phone and currency into evidence. Rodriquez wrote the police report.

Rodriguez's description of events was generally consistent with Fernandez's. Although Rodriquez did not see the apparent hand-to-hand transaction, he observed defendant loitering in front of the donut shop with another male. As the officers were riding toward the two men, Rodriquez made eye contact with defendant, who immediately took flight. Following defendant into the store, Fernandez saw defendant extend his left hand over a shelf of oil canisters and appear to drop something. After defendant was handcuffed, Rodriguez checked that shelf and found $179 in bundled up currency. Rodriquez booked the pills found in defendant's pocket and the currency into evidence.

By comparing the markings on the pills found in defendant's pocket to a "drug identification bible," a criminalist determined that the pills were pharmaceutical grade hydrocodone and Viagra.

### Second Incident – November 4, 2010
### Counts 3 – 7: Possession for Sale of Controlled Substances and Resisting Arrest

In the afternoon of November 4, 2010, Signal Hill Police Officer Justin Murr was on traffic patrol in a marked SUV when he noticed defendant in the driver's seat and another man (later identified as Kenneth Degrate) in the front passenger seat of a white Honda Civic with an expired registration tag. Murr turned on his lights and siren to effect a traffic stop. Instead of stopping, defendant turned into a motel parking lot, drove through the lot and then back onto the street, where he parked. As defendant was driving

3

through the parking lot, Murr could see defendant reaching down in an apparent effort to shove something under the front seat. Concerned that defendant may have been hiding a weapon, Murr directed defendant out of the car and performed a pat down search. Murr saw two prescription pill bottles on the driver's side floorboard, which Murr removed from the car. Both bottles contained pills and neither bottle was prescribed to defendant or Degrate. Meanwhile, Long Beach police officers Jason Smith and George Sargent had arrived to offer Murr their assistance. When defendant was told that his car was going to be impounded, defendant took off running.[3] Murr and Sargent gave chase while Smith remained at the car with Degrate. During the pursuit, defendant ignored commands to stop. When defendant tried to climb over a wall, Sargent grabbed defendant's right foot but defendant kicked Sargent's hand away and climbed onto the roof of a building. Defendant was not deterred even after Murr fired a Taser at defendant three times. With Murr in pursuit, defendant jumped from the roof he was on to the roof of the building next door. Defendant stopped running when that roof dead-ended. In a search incident to arrest, officers found $60 in defendant's pocket. Murr booked into evidence all of the prescription pill bottles found in defendant's car. While accompanying defendant to the hospital in an ambulance, Murr advised defendant of his *Miranda* rights. When defendant did not agree to waive those rights, Murr did not ask defendant any questions. At the hospital, in response to defendant's question, Murr told defendant he was being charged with possession of a controlled substance, possession of a prescription medication without a prescription and battery on a police officer. Defendant admitted possessing the pills, but maintained he did not batter anyone. Defendant told Murr he ran because he felt "violated."

Several officers participated in the search of defendant's car that afternoon. Signal Hill Police Officer Andrew Serna found three prescription pill bottles; two were empty and one contained 28 hydrocodone pills. Defendant's name was on the prescription label of the bottle with the pills in it. Long Beach Police Officer Smith recovered one pill

---

**3**    A recording taken by the camera in Murr's patrol SUV was played for the jury.

bottle with a ripped label which contained 21 Diazepam pills; a second bottle with no label which contained 85 Hydrochloride pills; a third bottle with the name "Willie Rollins" on the label which contained 60 Carisoprodol pills; a fourth bottle with a partially ripped label which contained 24 Cariosprodol pills; a fifth bottle which contained 20 codeine pills; and a bottle of Promethazine Codeine cough syrup. Signal Hill Police Officer Kurt Hyllested found a cell phone in the front seat. Checking the text messages, Hyllested found one dated October 3rd, which read: "I want to buy some Soma?"

Based on the drug identification bible (and in some cases, physical testing also), a criminalist determined that the nine bottles found in defendant's car contained: (1) 24 dihydrocodeine pills (a mixture of acetaminophen and hydrocodone); (2) 28 hydrocodone pills; (3) 24 dihydrocodeine pills; (4) 18 dihydrocodeine pills; (5) 20 codeine pills; (6) 31 diazepam pills; (7) 80 carisoprodol pills; (8) 60 carisoprodol pills; (9) 252 milliliters of liquid codeine; and (10) 85 tramadol pills. (See Health & Saf. Code, § 11055, subds. (b)(1)(G) [codeine], (b)(1)(I) [hydrocodone]; (c)(6) [dihydrocodeine]; § 11057, subd. (d)(9)[diazepam].) Tramadol and carisoprodol are not a controlled substances in California. (See Health & Saf. Code, §§ 11054-11058.)

*Other Evidence*

Long Beach Police Detective Christopher Bolt was familiar with defendant, who sold diazepam to Bolt's citizen informant in September 2009. The 2009 incident was similar to the 2010 incidents in three ways: (1) the 2009 transaction took place near the same donut shop into which defendant ran in his flight from the bicycle officers on October 1, 2010; (2) in the 2009 incident, defendant retrieved the pills he sold to the citizen informant from the same car defendant was driving when he was stopped by Murr on November 4, 2010; and (3) in the 2009 incident, police recovered a number of different controlled substances including some of the same controlled substances found in the car in the November 2010 incident. As an expert in possession for sale of narcotics,

5

Bolt formed the opinion that on both October 2, 2010 and November 4, 2010, defendant possessed the controlled substances for purposes of sale.

## DISCUSSION

A.  *There Were No Discoverable Documents In Murr's Personnel File*

Defendant requests that we independently review the sealed transcript of the trial court's in camera review of documents produced in response to his *Pitchess* motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)  We have done so and find the trial court adequately described the contents of Murr's personnel file and correctly concluded there were no relevant documents to be produced.

B.  *Defendant Was Not Prejudiced By the Limitation on Defendant's* Pitchess *Discovery*

Defendant contends it was an abuse of discretion for the trial court to grant his *Pitchess* motion but to limit the discoverable material to complaints alleging falsification of probable cause.  He argues that the scenario of officer misconduct alleged – Murr falsely stated that the pills were in plain sight on the floor board of the car – warranted discovery of any complaints regarding dishonesty or filing false police reports.  Apart from whether the limitation was too narrow, we find any such error harmless.

The sole and exclusive means by which citizen complaints against police officers may be obtained are the *Pitchess* procedures codified in Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 and 1045.  (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1539.)  The statutory scheme seeks to balance the defendant's right to discovery of records pertinent to the defense with the peace officer's reasonable expectation that the officer's personnel records will remain confidential.  (See *Chambers v. Superior Court* (2007) 42 Cal.4th 673, 682; *Zanone v. City of Whittier* (2008) 162 Cal.App.4th 174, 186.)  A *Pitchess* motion must include, among other things, an affidavit showing good cause for the discovery sought.  (Evid. Code, § 1043, subd. (b)(3); *Brown*, at p. 1539; see also *Galindo v. Superior Court* (2010) 50 Cal.4th 1,

12.)  "To show good cause as required by [Evidence Code] section 1043, [the] declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges" and "articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses."  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1024 (*Warrick*).)  The declaration "must also describe a factual scenario supporting the claimed officer misconduct."  (*Ibid*.)  The threshold showing of good cause required to obtain *Pitchess* discovery is "relatively low."  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83, 94.)

We review *Pitchess* orders under the abuse of discretion standard.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)  "Erroneous denial of a *Pitchess* motion is not reversible per se.  Rather, the failure to disclose relevant information in confidential personnel files, like other discovery errors, is reversible only if there is a reasonable possibility of a different result had the information been disclosed."  (*People v. Gaines* (2009) 46 Cal.4th 172, 176.)

Here, defendant's *Pitchess* motion sought "[a]ll records with regards to . . . dishonesty, filings of false police reports, and information regarding officers' credibility.  The defense is seeking complaints that evidence was falsified against arrestees."[4]  Attached as an exhibit to the motion was the first four pages of the five page police report, authored by Murr.  The report states that based on defendant's failure to immediately pull over and the furtive movements defendant made while driving through the parking lot, Murr surmised that defendant was attempting to either hide contraband or retrieve a weapon.  As Murr was approaching defendant's car, Murr saw defendant grab a small black bag from behind the driver's seat.  When Murr made contact with defendant, the bag was on defendant's lap and defendant was rummaging through it, apparently

---

[4]     The motion sought the personnel records of all "officers known to the police department and the prosecution . . . to have been present during the arrest and booking of the defendant," on November 4, 2010, including Murr.  The trial court limited discovery to complaints against Murr.  Defendant does not challenge that limitation.

looking for his paperwork, while at the same time brushing his foot against the floor board as if he was trying to conceal something under the seat. On the floor board, Murr saw "two orange plastic pill bottles [one containing 80 Carisoprodol pills and the other containing 60 Carisoprodol pills] and 24 white pills (Acetaminophen with Hydrocodone) spilled on the floor . . . ." The report states that, before defendant's car was towed, it was inventoried by Smith, Serna and Hyllested; the report describes the contents of each prescription bottle found by those officers.

The gist of defendant's *Pitchess* motion is that Murr lied about what happened during the traffic stop. In defendant's version of events (set forth in the body of the motion and not in counsel's affidavit), defendant stopped in response to the police car's red overhead lights and complied with the order to get out of the car; after defendant responded in the negative when asked whether he had anything to hide, he was searched; defendant responded in the negative again when Murr asked if he could search the car; notwithstanding defendant's refusal to give consent, Murr searched the car and found the pills in the car and in a black bag. Defense counsel's affidavit in support of the motion states: "[Defendant] did not give any permission for his vehicle to be searched, and [] no contraband was discovered but as a result of the officers carrying out an illegal search without permission or probable cause." At the hearing on the motion, defense counsel maintained that the statement in the police report that Murr saw the pills on the floor of the car was "fabricated in order to search the car . . . ." Counsel reasoned that the statement was inconsistent with the description of the pill bottles officers Smith, Hyllested and Serna found when they inventoried defendant's car before it was towed, which did not include any reference to finding loose pills.[5] Although it found the inconsistency inconsequential, "in an abundance of caution" it granted the motion as to only Murr's personnel records, and limited discovery to "complaints on the narrow issue of falsifying probable cause for purposes of the search. That very, very narrow subject."

---

[5]    We note that the last sentence on page four of the report, which describes what Serna found in defendant's car, is incomplete because it continues on to page five of the report, which is missing.

8

Assuming that it was an abuse of discretion for the trial court to deny *Pitchess* discovery of all acts of officer dishonesty, any error was harmless as there is no reasonable probability of a different result had the trial court not limited disclosure to acts related to probable cause.  (*People v. Gaines, supra*, 46 Cal.4th at p. 176.)  The records we have reviewed disclose that the custodian of records produced the entire personnel file of officer Murr.  That file had a single complaint -- one unrelated to officer dishonesty.  Thus even if the trial court erred in unduly restricting *Pitchess* discovery, there were no complaints that fell within either the court's order or the broader request by defendant.

**DISPOSITION**

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

9