Filed 9/10/15  P. v. Brewer CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VINCENT DURAY BREWER,<br><br>    Defendant and Appellant. | F068163<br><br>(Super. Ct. No. F1390615)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Edward Sarkisian, Jr. and Gregory T. Fain, Judges.†

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

* Before Levy, Acting P.J., Gomes, J. and Peña, J.

† Judge Sarkisian was the trial judge in this matter; Judge Fain conducted the *Pitchess* review.

Defendant Vincent Duray Brewer was convicted by jury trial of resisting an executive officer (Pen. Code, § 69). The trial court sentenced him to three years four months in prison. On appeal, he requests that we independently review the records reviewed by the trial court on his *Pitchess*[1] motion and determine whether the trial court abused its discretion by not providing him access to any of those records. We conditionally reverse the judgment.

## FACTS

On the morning of February 14, 2013, Brewer and three other inmates were placed in a holding cell in the county courthouse, awaiting appearance in court. Brewer was wearing a waist chain, handcuffs, and leg shackles. For about 30 minutes, he repeatedly screamed, "When am I going to court?" and "Get me into court." Deputy Tafoya asked him several times to lower his voice, but he continued to scream. Tafoya had another deputy open the cell door, then Tafoya confronted Brewer about his screaming, telling him to lower his voice and sit down. Brewer said he would not sit. Tafoya touched him on the shoulder to coax him into sitting, but Brewer batted his hand away.

Brewer took a combative stance and screamed at Tafoya. Tafoya realized he needed to use force to gain physical control over Brewer so he pushed him off-balance and tried to pull him out of the cell. Deputy Serrano arrived to assist Tafoya. Brewer was extremely agitated and combative. Tafoya and Serrano grabbed Brewer's jumpsuit and waist chain and tried to pull him out. Serrano told him to stop resisting. Tafoya and Serrano tried to get him up to a wall, but he resisted and all three went to the floor. Tafoya and Serrano got on top of Brewer to keep him down, but they were still unable to close the cell door. Brewer continued yelling, resisting, and thrashing. Serrano repeatedly told him to stop resisting. Tafoya dragged him by his leg shackles, but the cell

---

[1] A *Pitchess* motion is a motion for discovery of a peace officer's confidential personnel records. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)

door still could not close.  As Brewer continued to resist, he moved onto his side and elbowed Serrano in the groin area, causing Serrano to bend over in pain.

Brewer had been in these holding cells on previous occasions and he always yelled and complained about wanting to go to court, even though he was familiar with the procedures.

### Defense

Brewer testified that he asked a deputy why he had not yet been called to court. As he was talking to that deputy, Tafoya told him not to worry about it and said now he would be last because of his complaining.  Brewer heard Tafoya say he was tired of inmates complaining and whining about not getting to court.  Brewer told Tafoya he was just asking a question, not whining.  The cell door flew open and Tafoya entered the cell. He told Brewer to sit down and tried to push him down.  Brewer assumed a stance to avoid being pushed into the toilet.  Serrano stepped in and grabbed him by his waist chain.  Tafoya and Serrano slung him to the floor head-first; they made no attempt to put him on a bench or against a wall.  Brewer could not resist; he could only turn his head so as not to fall on his face.  Serrano smashed his face onto the floor, then Tafoya dragged him down the hall by his ankle chains while his hands were under his stomach.  Serrano held his knee in Brewer's back. Tafoya and Serrano got on top of him and pinned him to the ground.  He was in pain and he sustained injuries to his face, chest, and ankles.  He was unable to move; he did not elbow Serrano in the groin.  He knew Serrano was trying to hurt him so he played dead and did not move at all.

Another inmate from the same holding cell testified that Brewer was having a conversation with the deputies when something happened and Brewer was jerked out of the cell, put on the wall, then taken to the ground.  Brewer did not struggle.

### Rebuttal

A correctional officer working in the courthouse heard what she believed was yelling by a disgruntled inmate in one of the holding cells.  After the yelling stopped, she

3.

saw Serrano walking down the hallway, bent over in apparent pain and cupping his groin area.

Another correctional officer heard a disruptive inmate yelling and screaming. The correctional officer saw Tafoya calmly explain to Brewer that he would let him out as soon as the court called for him, but Brewer continued to yell and scream. The correctional officer saw Tafoya and Serrano scuffling with Brewer on the floor, trying to gain control over him. Brewer was flopping like a fish. The correctional officer also saw Serrano bent over in pain.

A nurse who examined Brewer observed no injuries.

## DISCUSSION

Before trial, Brewer made a *Pitchess* motion requesting disclosure of Tafoya's and Serrano's personnel records relevant to excessive use of force and fabrication of charges. At the hearing on the motion, the trial court found sufficient grounds to review the personnel records in camera. After conducting the in camera review, the trial court stated it had found no discoverable documents.

"A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045." (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 318.) "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] … If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation], 'the trial court should then disclose to the

defendant "such information [that] is relevant to the subject matter involved in the pending litigation."'"" (*People v. Gaines* (2009) 46 Cal.4th 172, 179 (*Gaines*).)

A trial court's decision on a *Pitchess* motion is reviewed under an abuse of discretion standard. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285 (*Prince*).) The exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) We review the record for "materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) The record of the trial court's in camera hearing is sealed, and appellate counsel are not allowed to see it. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) Thus, on request, the appellate court must independently review the sealed record. (*Prince, supra,* 40 Cal.4th at p. 1285.)

In our review of the personnel files, we located relevant subject matter that should have been disclosed under the *Pitchess* motion. This matter is found in Serrano's personnel file in (1) the Employee Performance Evaluation from the Northeast Field Services Department for the period of June 12, 2005 to November 6, 2006; (2) the Employee Performance Evaluation from the Detention Custody Department for the period of November 7, 2005 to May 8, 2006; and (3) the Internal Affairs report regarding an officer-involved shooting on May 17, 2008.**2**

---

**2** When reviewing this part of Serrano's personnel file, the trial court stated:

"Now we'll turn next to the next portion of the file which is Evaluations. Again, these are green forms. It's—you know, there are probably 35 pages or 40 pages here. Again, from experience, this type of information is employee performance evaluations. Generally there [is] no discoverable information here, but I'm going to review them nonetheless.

"Okay. Again, these are evaluations. I reviewed them. There's no discoverable information in the evaluations." !(RT 7)!

5.

We conclude the trial court abused its discretion in failing to order disclosure of this relevant information. Thus, we will conditionally reverse and remand for further proceedings. (See *People v. Fernandez* (2012) 208 Cal.App.4th 100, 123.) Brewer will be required to demonstrate a reasonable probability the outcome would have been different had the information been disclosed. (*Gaines, supra,* 46 Cal.4th at pp. 182-183.)

## DISPOSITION

The judgment is conditionally reversed with directions to the trial court to order disclosure of the relevant information and to allow Brewer a reasonable opportunity to investigate the newly disclosed material and determine whether it would have led to any relevant and admissible evidence he could have presented at trial. If Brewer can demonstrate he has been prejudiced by the denial of the discovery, the trial court must order a new trial. If Brewer cannot demonstrate prejudice as a result of the denial of discovery, the judgment is to be reinstated.