Filed 8/31/16  P. v. Delgado CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>JUAN CARLOS DELGADO,<br><br>　　Defendant and Appellant. | B261252<br><br>(Los Angeles County<br>Super. Ct. No. BA416608) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Upinder S. Kalra, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

_____

Juan Carlos Delgado appeals from the judgment entered following a jury trial in which he was convicted of one count of assault with a semiautomatic firearm in violation of Penal Code[1] section 245, subdivision (b) (count 2), and one count of felon in possession of a firearm in violation of section 29800, subdivision (a)(1) (count 3).[2] The jury found true gang and personal firearm use allegations as to the assault. (§§ 186.22, subd. (b)(1); 12022.5.) The trial court found true the allegation that appellant suffered a prior serious felony conviction that qualified as a strike within the meaning of the Three Strikes law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d); 667, subd. (a)(1).) The court sentenced appellant to an aggregate term of 26 years 4 months in state prison.[3]

Appellant contends: (1) The true finding on the gang enhancement must be reversed because it was based on improperly admitted statements regarding gang affiliation that appellant made during booking; (2) Substantial evidence does not support the true finding on the gang enhancement, requiring reversal; (3) The trial court erred in imposing sentencing enhancements under both sections 186.22, subdivision (b)(1)(C) and 12022.5. We agree that the gang enhancement allegation lacks substantial evidentiary support and reverse that finding. In all other respects, we affirm.

## FACTUAL BACKGROUND

### September 23, 2013

Approximately 10:00 p.m. on September 23, 2013, Elias Paxtor and Juana Barrera were sitting in Paxtor's car, parked in the driveway of Barrera's home near the

---

[1] Undesignated statutory references are to the Penal Code.

[2] The jury acquitted appellant on count 1, attempted second degree robbery. (§§ 664/211.)

[3] The sentence consisted of the low term of three years on count 2, doubled to six years for the prior strike conviction (§ 667, subd. (e)(1)), plus a consecutive term of four years for the personal firearm use enhancement (§ 12022.5), plus ten years for the gang enhancement (§ 186.22, subd. (b)(1)(C)), plus five years for the prior serious felony conviction enhancement (§ 667, subd. (a)(1)). On count 3, the court sentenced appellant to a consecutive term of eight months, doubled for the prior strike conviction.

intersection of Arapahoe and Washington west of downtown Los Angeles. Paxtor, who was sitting in the driver's seat, had turned off the car's engine and headlights and had rolled down the driver's side window.

Appellant and another person rode up to the car on bicycles. Appellant approached the driver's side window, and his companion went to the passenger side, where Barrera was sitting. Appellant put a gun to Paxtor's head and asked him if he belonged to a gang. Paxtor responded that he did not belong to any gang. Still pointing the gun at Paxtor's head, appellant demanded that Paxtor hand over everything in his wallet. As Paxtor started to pull out his wallet, he told appellant he did not have any money. Appellant and the other man then abruptly left, riding away on their bicycles.

The entire interaction lasted 15 to 30 seconds. Angered by the incident, Paxtor began following appellant in his car and called the police. Paxtor followed appellant for about an hour. During this time, he dropped Barrera off at her house and resumed his pursuit of appellant. As he continued to follow appellant, he dialed 911 multiple times and saw appellant apparently commit a similar assault on another man. After appellant had left again, Paxtor spoke to the man, who told Paxtor appellant had demanded money.

Paxtor saw appellant point his gun at someone else in front of a Laundromat. Appellant went inside the Laundromat with his bicycle. Police arrived, arrested appellant in the Laundromat, and recovered a loaded semi-automatic handgun hidden in a laundry basket. Later that night, Paxtor identified Carlos Sarabia as the second suspect in the assault.

### Gang Evidence

Paxtor believed appellant to be a gang member when appellant asked Paxtor whether he belonged to a gang. He also noticed appellant had tattoos on his face and recognized the Playboy bunny tattoo on appellant's cheek as a gang tattoo, although he did not know with what gang it was associated. In fact, appellant had four gang-related tattoos on his face, as well as two on his torso, all signifying membership in the Playboys gang.

3

One of the arresting officers, Officer Rafael Espinoza, transported appellant to the Olympic area police station for booking. During the booking process, Officer Espinoza asked appellant a series of standard questions. One of those questions was: " 'Have you ever been affiliated with a prison or street gang?' " Appellant responded, " 'I'm Risky from Playboys.' "

Los Angeles Police Officer Kenny Talbert testified as the prosecution's gang expert. He explained that the Playboys gang is a predominantly Hispanic gang with approximately 500 documented members, 200 of whom are "active." Playboys is the third most powerful gang in the Los Angeles Police Department's Olympic Division, behind its main rivals, the Mara Salvatrucha and 18th Street gangs. According to Officer Talbert, the Mexican Mafia controls the Hispanic street gangs in Southern California, including the Playboys.

The primary activities of the Playboys gang are possession of handguns, robbery, grand theft of automobiles, carjacking, and selling narcotics, by which the gang funds itself. Assaults with weapons also constitute a common Playboys gang activity. According to Officer Talbert, assaults benefit the gang by instilling fear in the community, which in turn deters victims from talking to the police and reporting gang crime, thus enabling the Playboys to control their territory and sell narcotics. Indeed, fear and intimidation enhance the gang's power by allowing the gang to commit crimes with impunity, protecting gang members from rivals, and increasing the gang's membership.

Officer Talbert served in the Olympic Division's gang enforcement unit for four years. During that time, he interacted with appellant at least 15 times, and appellant identified himself as a member of the Playboys in about half of those encounters. Officer Talbert also reviewed 19 field identification (FI) cards generated by law enforcement between 2010 and 2012, which indicated appellant was a member of the Playboys and his gang moniker was "Little Risky." The officer identified appellant's Playboys gang tattoos and opined that gang tattoos on the face constitute a claim of gang affiliation, signifying a "deeper involvement" in the gang. Officer Talbert speculated that appellant

4

is a "shot caller" for the Playboys, based on his long tenure with the gang. According to Officer Talbert, appellant would not be engaged in "low status" gang activity such as tagging to mark gang territory, which would be done by newer gang members.

In Officer Talbert's opinion, appellant was an active member of the Playboys gang when he committed the assault on September 23, 2013. He based his opinion on appellant's gang tattoos and the 19 FI cards he reviewed, while conceding that there were no FI cards dated after 2012. He further recognized that appellant's association with other Playboys gang members noted on the FI cards was limited to contacts with his own brothers, who were documented Playboys gang members, and one incident in which appellant was associating with Playboys member Jose Gomez on December 27, 2010. There was no evidence that the second suspect in the assault had any gang affiliation.[4]

In response to a hypothetical based on the facts of the case, Officer Talbert opined that appellant committed the assault in this case for the benefit of the Playboys gang. He reasoned that a gang member committed the crime, the crime instills fear in the community, and the crime was committed in rival gang territory, which would help the Playboys "take over another area" and gain prominence. Officer Talbert explained that when a gang member openly commits a crime in rival gang territory, it helps the gang expand its territory into that of its rival and establish narcotic trafficking in the area, thereby enabling it to pay dues to the Mexican Mafia.

## DISCUSSION

### The True Finding on the Gang Enhancement Allegation Lacks
### Substantial Evidentiary Support

Appellant contends that because the gang enhancement finding is based entirely on supposition, it is not supported by substantial evidence and must be reversed. We agree.

---

[4] Officer Herman Rodriguez, one of the arresting officers in this case, conducted the field show-up of appellant's accomplice with Mr. Paxtor. Although the officer had no evidence that Sarabia was a gang member, he testified he had assumed that, because Sarabia had been caught in a gang area, he must be a gang member.

**A.** *Applicable Law*

The standard of appellate review for determining the sufficiency of the evidence supporting an enhancement is the same as that applied to a conviction. (*People v. Wilson* (2008) 44 Cal.4th 758, 806; *People v. Mejia* (2012) 211 Cal.App.4th 586, 614.) Like a conviction unsupported by substantial evidence, a true finding on a gang enhancement without sufficient support in the evidence violates a defendant's federal and state constitutional rights and must be reversed. (*People v. Weddington* (2016) 246 Cal.App.4th 468, 483; *People v. Ochoa* (2009) 179 Cal.App.4th 650, 656–657 (*Ochoa*).)

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).) We draw all reasonable inferences in favor of the verdict and presume the existence of every fact the jury could reasonably deduce from the evidence that supports its findings. (*People v. Maciel* (2013) 57 Cal.4th 482, 515; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

The court may not, however, " 'go beyond inference and into the realm of speculation in order to find support for a judgment. A finding . . . which is merely the product of conjecture and surmise may not be affirmed.' " (*People v. Memro* (1985) 38 Cal.3d 658, 695, overruled on other grounds by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; *People v. Marshall* (1997) 15 Cal.4th 1, 35; *Ochoa*, *supra*, 179 Cal.App.4th at p. 663.) " '[E]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact.' " (*People v. Thompson* (1980) 27 Cal.3d 303, 324.) Indeed, "[a] trier of fact may rely on inferences to support a conviction only if those inferences are 'of such substantiality that a reasonable trier of fact could determine beyond a reasonable doubt' that the inferred facts are true.

6

(*People v. Raley* (1992) 2 Cal.4th 870, 890–891.)" (*People v. Rios* (2013) 222 Cal.App.4th 542, 564 (*Rios*).)

In 1988 the Legislature enacted section 186.20 et seq., known as the California Street Terrorism Enforcement and Prevention Act, to combat the scourge of gang-related crimes and violence afflicting the state. (*People v. Prunty* (2015) 62 Cal.4th 59, 66–67.) Section 186.22, subdivision (b)(1) imposes various sentencing enhancements on a defendant convicted of a gang-related felony committed with the specific intent to promote, further, or assist in any criminal conduct by gang members.

There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1), both of which must be established by the evidence. (*Albillar*, *supra*, 51 Cal.4th at p. 59.) The first prong requires proof that the underlying felony was "gang-related," that is, the defendant committed the charged offense "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1); *Albillar*, *supra*, 51 Cal.4th at p. 60; *People v. Gardeley* (1996) 14 Cal.4th 605, 622.) The second prong "requires that a defendant commit the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (*Albillar*, at p. 64; § 186.22, subd. (b)(1).)

"In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on criminal street gangs." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047–1048.) " 'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support [a] gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; *Albillar*, *supra*, 51 Cal.4th at p. 63.) While an expert may render an opinion assuming the truth of facts set forth in a hypothetical question, the "hypothetical question must be rooted in facts shown by the evidence." (*People v. Gardeley*, *supra*, 14 Cal.4th at p. 618.) Indeed, an "expert's opinion may not be based 'on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors.' " (*People v. Richardson* (2008) 43 Cal.4th 959, 1008; *People v. Gardeley*, *supra*, 14 Cal.4th at p. 618

[" 'Like a house built on sand, the expert's opinion is no better than the facts on which it is based' "].)  And an expert is generally not permitted "to supply case-specific facts about which he has no personal knowledge" in order to render an opinion about what those facts may mean.  (*People v. Sanchez* (2016) 63 Cal.4th 665, 676 (*Sanchez*).)

As for the specific intent prong, " '[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' " (*Rios*, *supra*, 222 Cal.App.4th at pp. 567–568.)  Our Supreme Court has thus held that the scienter requirement may be satisfied with proof "that the defendant intended to and did commit the charged felony with known members of a gang," from which "the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 68.)  However, in the absence of evidence that the defendant acted in concert with other gang members, an inference of specific intent requires evidence beyond mere commission of the charged offense and gang membership.  (See *Rios*, *supra*, 222 Cal.App.4th at pp. 573–575.)

### B.  *The Insufficiency of the Evidence*

"A gang expert's testimony alone is insufficient to find an offense gang related. [Citation.]  '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' " (*Ochoa*, *supra*, 179 Cal.App.4th at p. 657.)  In *Ochoa*, the crime was a carjacking committed by a lone gang member wielding a shotgun outside his gang's territory.  Finding "nothing in the circumstances of the instant offenses [to] sustain the expert witness's inference that they were gang related," the appellate court reversed the gang enhancements based on insufficient evidence to support the gang-related prong of the statute.  (*Id*. at pp. 661–662.)

In support of the gang-related prong of the enhancement here, Officer Talbert testified that the assault could benefit appellant's gang in several ways, but the record is devoid of any specific evidentiary support from which to draw such inferences.  Officer

8

Talbert opined that appellant is an active member of the Playboys gang and committed the assault for the benefit of the gang by instilling fear in the community. He further testified that by committing a crime on rival gang turf, appellant would benefit his gang by helping it to expand its territory and its narcotics operations, which would enhance its ability to pay dues to the Mexican Mafia. He speculated that the assault in rival gang territory would benefit the Playboys by enabling the gang to "take over" the area and set up narcotics trafficking operations there, which would somehow make the Playboys' "area even more prominent." But no evidence exists in this case to connect appellant's assault with any attempt to take over rival gang territory, much less the sale of narcotics or paying dues to the Mexican Mafia. The expert also opined that the gang would stand to benefit from the criminal act of a member regardless of where the crime is committed—inside or outside gang territory—because a crime committed anywhere by a member of the gang instills fear in the community. Again, the record reveals no evidence to support the expert's supposition.

Officer Talbert postulated another benefit to the gang might be that the assault served as an "initiation" to show "any new recruits" that they would be expected to go out and commit criminal activity to further the gang. But even Officer Talbert was forced to admit such a characterization of the assault amounted to nothing more than idle speculation.

In reaching his conclusion that the assault benefited the gang, Officer Talbert relied on the evidence that appellant was a documented member of the Playboys gang, he had visible gang tattoos on his face, and he asked the victim what gang he was from.[5] In

---

[5] Appellant further cites our Supreme Court's recent decision in *Sanchez* to challenge the sufficiency of the evidence in support of the gang allegation. *Sanchez* announced the following rule: "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth. If the case is one in which a prosecution expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless

9

the expert's opinion, it did not matter that appellant did not speak the name of his gang, because the tattoos on his face declared the crime was connected to the gang, whether or not the victim understood the significance of the tattoos. Further, when a gang member asks someone, "Where are you from?" it is always meant as a challenge, and the wrong response could lead to some kind of violent reaction. According to the expert, when members of the community who are not gang members are asked that question, it instills fear, it makes them feel uncomfortable, and it makes them feel challenged, which ultimately benefits the gang. But the evidence underlying the expert's opinion established nothing more than appellant's membership in a gang, which is wholly inadequate to support the inference that appellant committed assault for the benefit of his gang.

Noting that not all crimes are necessarily gang related, *Ochoa* explained, "In an evidentiary context, ' "[r]eaching a conclusion that offenses are signature crimes requires a comparison of the degree of distinctiveness of shared marks with the common or minimally distinctive aspects of each crime." ' " (*Ochoa*, *supra*, 179 Cal.App.4th at p. 662.) Here, the expert did not characterize assault as a signature crime of the Playboys gang, mentioning the offense as a common gang activity almost as an afterthought. Moreover, the prosecution presented no evidence to suggest the Playboys commit the crime of assault in a distinctive manner or that appellant did so in this case. The evidence

_____

(1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination, or forfeited that right by wrongdoing." (*Sanchez*, *supra*, 63 Cal.4th at p. 686, fn. omitted.) Thus, appellant contends that information on the FI cards upon which Officer Talbert based his opinion that appellant is a member of the Playboys gang constitutes inadmissible testimonial hearsay which ran afoul of the confrontation clause.

We need not decide whether the contents of the FI cards here constituted inadmissible hearsay or was testimonial, however. First, as in *Sanchez*, the circumstances surrounding the preparation of the FI cards do not appear in the record. We therefore have no means by which to assess the primary purpose for which they were prepared. (See *Sanchez*, *supra*, 63 Cal.4th at p. 697.) Moreover, in this case Officer Talbert relied not only on the FI cards prepared by others, but also on his own observations and interactions with appellant in concluding he was an active Playboys gang member.

here thus showed nothing more than a garden variety assault committed by a member of a gang. This, standing alone without a shred of evidence of a real world benefit to the gang, does not suffice to support imposition of a gang enhancement.

*Ochoa* declared: "There was no evidence that *only* gang members committed carjackings or that a gang member could not commit a carjacking for personal benefit, rather than for the benefit of the gang. Indeed, two of the People's witnesses testified that gang members can commit crimes on their own without benefitting the gang. While the sergeant effectively testified that carjacking by a gang member would always be for the benefit of the gang, this ' "did nothing more than [improperly] inform the jury how [the expert] believed the case should be decided," ' without any underlying factual basis to support it." (*Ochoa*, *supra*, 179 Cal.App.4th at p. 662, quoting *In re Frank S.* [(2006) 141 Cal.App.4th 1192,] 1197.)

So it is in the case before us. Officer Talbert conceded that gang members sometimes commit crimes for personal gain and not for the benefit of a gang. But he insisted "only an active gang member is going to ask where you're from," and any criminal act that follows such a question is committed for the benefit of the gang. Thus reduced to its essence, Officer Talbert simply informed the jury that appellant was a gang member, and any crime he committed benefited the gang. But as our Supreme Court has emphasized, "[m]ere active and knowing participation in a criminal street gang is not a crime." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.) And a "gang enhancement cannot be sustained based solely on defendant's status as a member of the gang and his subsequent commission of crimes." (*Ochoa*, *supra*, 179 Cal.App.4th at p. 663; *Rios*, *supra*, 222 Cal.App.4th at pp. 573–574.)

Officer Talbert himself rejected the notion that one could conclude a person commits a crime for the benefit of a gang based solely on gang affiliation, gang tattoos and carrying a weapon, saying, "You need more factors." But the prosecution here failed to present any evidence of other factors to support the expert's opinion of gang benefit. Accordingly, the gang enhancement cannot be sustained on the basis of the expert's

11

opinion.

While the evidence falls well short of demonstrating the assault was gang-related, the prosecution's showing on the specific intent prong of the enhancement was completely nonexistent. Officer Talbert gave no opinion at all about whether appellant committed "the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.' " (See *Albillar*, *supra*, 51 Cal.4th at p. 64; § 186.22, subd. (b)(1).) But even if such an opinion could be teased out of the expert's testimony regarding gang-relatedness, an inference about appellant's intent would lack any basis in the evidence. While appellant committed his crime in concert with another person, the record contains no evidence that Sarabia had any gang affiliation whatsoever. As discussed above, the prosecution sought to prove the gang allegation with evidence of appellant's gang status and his commission of the charged offense after asking the victim where he was from. But as *Rios* explained: "Although *Albillar* instructs that the prosecution may rely on the charged offense as the criminal conduct supporting the enhancement when the defendant acts in concert with others, in a case such as this, where the defendant acts alone, the combination of the charged offense and gang membership alone is insufficient to support an inference on the specific intent prong of the gang enhancement." (*Rios*, *supra*, 222 Cal.App.4th at pp. 573–574; *Albillar*, *supra*, 51 Cal.4th at p. 68.) The record in this case contains no facts to fill this evidentiary void, and hence, no basis to find the requisite intent under the second prong of the gang statute.

For all these reasons, we hold that the evidence was insufficient to support the gang allegations in this case. (§186.22, subd. (b)(1).) Because we reverse the jury's true finding on the gang enhancement allegation, we need not address appellant's other contentions regarding admission of his statements during booking about his gang affiliation and the court's imposition of sentencing enhancements under both sections 186.22, subdivision (b)(1)(C) and 12022.5.

12

## DISPOSITION

The true finding on the gang enhancement allegation is reversed, and the cause remanded to the trial court for resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


                                                        LUI, J.

We concur:


        CHANEY, Acting P. J.


        JOHNSON, J.